In re the MARRIAGE OF Robert Marvin ULLERICH and Milicin Rochelle Ullerich.

Upon the Petition of Robert Marvin Ullerich, Petitioner-Appellee,

And Concerning

Milicin Rochelle Ullerich, Respondent-Appellant.

No. 84–910.

Court of Appeals of Iowa.

Feb. 26, 1985.

Gary T. Gee of Gee and Gregg, Shenandoah, for respondent-appellant.

Jennifer J. Rose, Shenandoah, for petitioner-appellee.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

Respondent appeals from the decree dissolving the parties' marriage. She claims that the trial court erred in awarding custody of the parties' minor child to petitioner over her and in placing limitations on her visitation.

Petitioner, Robert Ullerich, and respondent, Milicin Ullerich, were married in 1978 and had one child born to this marriage, a son, Cade Seth Ullerich, who was born September 30, 1981. Cade is in good health and is the object of this disputed custody award. Robert, age 26, works in a factory while Milicin, age 23, works part time as a clerk.

The decree of dissolution, entered April 26, 1984, awarded sole custody of Cade to Robert, subject to liberal visitation rights in Milicin. However, it directed that while Milicin has Cade with her for visitation there shall not be present in her living quarters any adult male to who she is not married or related within the third degree of affinity or consanguinity.

The custody award to Robert was based on the trial court's findings that (1) he had always actively participated in Cade's care and was an "accomplished housekeeper;" and (2) that "the best interests of the child

are somewhat secondary to [Milicin's] personal convenience and pleasure." The trial court noted that during the marriage Milicin had had a tendency to sleep late and let Cade fend for himself, and that since the parties had separated, Milicin "had been engaged in a number of indiscretions," and Cade had been in the apartment "three or four times during these adventures." There was, however, no mention in the record or the decree that Cade had witnessed any of Milicin's sexual relations with her boyfriend or that he had been adversely affected thereby. There was also evidence that Milicin was afraid to discipline Cade and tended to panic in emergency situations demanding immediate action to protect Cade's safety and welfare.

The trial court noted that the lack of communication between the parties made the option of joint custody impossible. Since that time, however, Robert's attorney suggested at oral argument that joint custody would be in order here in light of the amendments to section 598.41 of the Iowa Code. *See* 1984 Iowa Acts 1088.

Our review is de novo. Iowa R.App.P. 4. When considering the credibility of witnesses, we give weight to the trial court's findings but are not bound by them. Iowa R.App.P. 14(f)(7).

■ In child custody cases, the best interests of the child is the first and governing consideration. Iowa R.App.P. 14(f)(15); *Schoonover v. Schoonover*, 228 N.W.2d 31, 34 (Iowa 1975). The factors considered in awarding custody are enumerated in section 598.41(3) of the Iowa Code and in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974) and need not be repeated here. The critical issue in determining the best interests of the child is which parent will do better in raising the child; gender is irrelevant and "neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding." *In re Marriage of Bowen*, 219 N.W.2d 683, 689 (Iowa 1974).

■ Because our object is to make a custody award "which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents" after dissolution of the marriage, Iowa Code § 598.41(1) (1983) (as amended by 1984 Iowa Acts 1088), we favor granting joint custody whenever reasonable and in the child's best interests. Especially when either parent applies for joint custody, as Robert did here through his attorney, we shall consider granting it even when the other parent opposes joint custody. Iowa Code § 598.41(2) (1983) (as amended by 1984 Iowa Acts 1088). Moreover, in the event that we do not grant joint custody, we shall cite "clear and convincing evidence, pursuant to the factors in subsection 3, that joint custody is unreasonable and not in the best interest of the child to the extent that the legal custodial relationship between the child and a parent should be severed." *Id.*

■ The trial court found that an award of joint custody was impossible due to the parties' lack of communication. However, we are not bound by this finding, *see* Iowa Rule of Appellate Procedure 4, and view Robert's attorney's request for joint custody as indicative of improved communication between the parties. At any rate, we are unpersuaded that lack of communication between the parents, standing alone, constitutes clear and convincing evidence that joint custody should not be granted.

■ Although we are satisfied that the evidence shows Robert to be the better physical custodian, we cannot agree that sole custody in the father is warranted. "Joint legal custody does not require physical care," Iowa Code section 598.41(4) (1983) (as amended by 1984 Iowa Acts 1088), and we see no reason why Milicin should not have equal rights and responsibilities in making decisions "affecting the child's legal status, medical care, education, extracurricular activities," and other matters. Accordingly, we award joint legal custody to both parties with the physical care in Robert.

■ The trial court gave Milicin liberal visitation rights over Cade but restricted

her from having any adult males present in her living quarters "to whom she is not married or related within the third degree of affinity or consanguinity" while Cade is with her. This restrictive provision would produce unreasonable and unfair results such as excluding a plumber, landlord, or a female friend accompanied by her husband or a male friend. In order to avoid violating the trial court's proscription, Milicin would undoubtedly be subjected to unnecessary embarrassment by being forced to turn away casual visitors. Therefore, we strike the restriction on male visitors in favor of reasonable and proper visitation as would not interfere with Cade's health, education, or welfare. The decree specified the times for such reasonable and proper visitation and we affirm these provisions.

AFFIRMED AS MODIFIED.