In re the MARRIAGE OF Roger G. LUNDTVEDT and Kathleen M. Lundtvedt.

Upon the Petition of Roger G. Lundtvedt, Appellant,

And Concerning Kathleen M. Lundtvedt, Appellee.

No. 91–957.

Court of Appeals of Iowa.

March 24, 1992.

James Burns and Linny C. Emrich of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, for appellant.

Richard D. Zahasky, Decorah, for appellee.

DONIELSON, Presiding Judge.

Roger Lundtvedt and Kathleen Baker were married in November 1984. Six years later, in November 1990, the district court entered a decree dissolving the couple's marriage. Between them, Roger and Kathleen brought six children to the marriage, and another, Adam, was born two years into the marriage. Kathleen's oldest son is presently living with his father in Texas. Adam lives with Kathleen and her other three children in Decorah, Iowa. Roger maintains his residence in Hopkinton, Iowa. His other two children are now adults living on their own.

At the time of trial Roger was forty-three, and Kathleen was thirty-eight. In addition to his farming operation, Roger works for the postal service in Hopkinton, Iowa. He earns between $34,000 and $35,000 per year in wages, and he receives an annual salary of $2,500 as a member of the Army Reserve. He also earns income from his rental properties, but he claims to be losing money in his farming operation.

During the marriage Kathleen obtained a position with the postal service as well. On average, she works thirty-seven hours a week at an hourly rate of $12.33. Accordingly, her average take-home pay is approximately $300 to $325 per week. She also receives $900 per month to support the three children of her previous marriage.

Roger's premarital assets included farmland and machinery subject to a substantial debt. Kathleen also brought property to the marriage. Before marrying, Kathleen sold her Texas real estate, generating net proceeds of almost $25,000. From these proceeds, she loaned Roger $10,000, of which only $2,000 was paid back during the marriage. The parties used the balance of the sale proceeds to defray family living expenses.

During the marriage Roger purchased a mobile home in Hopkinton for $4,000. The trial court found the present fair market value of the mobile home to be $7,500. The parties also bought the post office building for $7,000 and an adjacent property for $500. The trial court found the present fair market value of these two properties to be $12,500 and $1,200, respectively.

The district court's decree awarded the parties joint custody of Adam and granted his primary physical placement to Kathleen. The court also ordered Roger to pay Kathleen $75 per week for Adam's support.

In distributing the property, the trial court found the parties' antenuptial agreement to be invalid due to Roger's failure to make a full disclosure of his assets and debts.[1] The court awarded Roger the farm property and the Hopkinton mobile home. Kathleen received the other properties in Hopkinton, including the post office building. The court also awarded Kathleen an $8,000 judgment and provided a schedule for payment. Roger was ordered to pay all farm debts.

Roger now appeals. He challenges the property distribution provisions of the decree and contends the trial court erred in placing Adam in Kathleen's primary physical care. In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek,* 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7). We affirm the trial court's dissolution decree with modifications.

■ I. Property Distribution. Roger argues the trial court's decision to award the post office building to Kathleen is inequitable. He contends the court's order forces the parties into a business arrangement which will only aggravate an already bitter relationship. We agree.

Roger has been the postmaster in Hopkinton since 1983. During the marriage he purchased the building in which the post office is now located and leased the space to the federal government. He works in the post office building every day and has been solely responsible for its maintenance.

Landlord-tenant relationships are often difficult to manage. Likewise, the relationship which exists between divorced parents is also often difficult to manage. To ask the parties to maintain both relationships simultaneously is probably a recipe for disaster. As such, we believe the trial court's

decision to superimpose a landlord-tenant relationship over the already troublesome relationship of these former spouses should be modified.

We modify the trial court's order by awarding Roger the post office property and lease valued at $12,500. Roger shall pay the debt of $4,120 on this property. Furthermore, we modify the judgment entered by the trial court in favor of Kathleen and against Roger by increasing it in the amount of $8,380. Therefore, the judgment now totals $15,380, having been reduced by the prior payment of two annual installments of $500. This judgment shall continue to be noninterest bearing if Roger makes payments of $961.25 on each January 2 beginning January 2, 1993. All other terms and conditions governing the judgment and its payment remain in force.

We find no merit in Roger's challenge to the award of a judgment and lien in Kathleen's favor or to any other property distribution provision of the decree. Therefore, we affirm the trial court's property distribution as modified.

■ II. Child Custody. Roger also asks that he be awarded the primary physical care of Adam. Roger claims he is better able to minister to Adam's long-term best interests. We decline to modify the custody provisions of the parties' decree.

The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3) and in *In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983), and *In re Marriage of Winter,* 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration," the court's determination of what will be in the long-term best interests of the child. *In re Marriage of Vrban,* 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will do better in raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in a

---

**1.** Antenuptial agreements executed on or after January 1, 1992, are governed by chapter 596 of the Code. *See* Iowa Code § 596.12 (1991 Supp.).

**616**

dissolution proceeding. *In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App. 1985).

From our review of the record, we are convinced the trial court's order placing Adam in Kathleen's primary physical care serves his long-term best interests. We therefore affirm the custody of provisions of the decree.

Each party shall pay one-half of the costs of this appeal.

For all the reasons stated, the judgment of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.

All Judges concur, except SACKETT, J., who dissents.

SACKETT, Judge (dissenting).

I dissent. I would affirm the trial court.