In re the MARRIAGE OF Verle Thomas MANSON and Audrey Ann Manson.

Upon the Petition of Verle Thomas Manson, Appellee,

and concerning Audrey Ann Manson, Appellant.

No. 92–1219.

Court of Appeals of Iowa.

May 25, 1993.

Patrick A. McGivern of Clark, Butler, Walsh & McGivern, Waterloo, for appellant.

Gary J. Boveia of Boveia Law Office, Waverly, for appellee.

Heard by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

SCHLEGEL, Presiding Judge.

The wife appeals the district court's dissolution decree, arguing the court erred in: (1) awarding primary custody of the children to the husband; (2) failing to grant her more liberal visitation rights; (3) determining the child support award; and (4) dividing the parties' property. She contends she should be awarded alimony if the property division is not altered, and she requests attorney fees and expenses on appeal.

Tom and Audrey Manson were married in 1969 and divorced in 1992. When they married Tom worked at a grain elevator. In 1972 the couple purchased a 130–acre farm, and Tom quit working at the grain elevator and has farmed full-time since then. Since 1972 he has also farmed the 141–acre farm which belonged to his parents. He rented this land from them from 1972 to 1984 when he inherited this farm. Audrey has worked full-time as an L.P.N. since 1969. She currently has a net income of $1,211 per month. The parties have two children, Matthew, born in 1981, and Mark, born in 1985.

The district court found Tom the more stable and reliable parent and awarded primary physical custody of the two children to him. The court granted Audrey visitation rights which include alternate weekends, specified holidays, and four weeks in the summer.

Because of Audrey's contribution to the marriage and the relatively long duration of the marriage, the district court found that Tom's substantial inheritance should

not be entirely excluded from the property division. Audrey's net award was $147,826 and included the 130–acre farm and a real estate contract. Tom's net award was approximately $350,000. Audrey was allocated thirty-six percent of the farm debt which, at the time of trial, amounted to over $72,000 of the total debt of $202,212.67. The court also ordered Audrey to pay $450 per month child support. While Audrey's net income from her work as an L.P.N. is only $1,211 per month, the court applied the Uniform Child Support Guidelines to a projected net income of $1,500 per month based on the property awarded to her. Audrey appeals the dissolution decree. We affirm as modified.

Our review in cases such as these is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7). We are not bound by these determinations, however. *Id.* Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

In child custody cases, the best interests of the child is the first and governing consideration. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3), in *In re Marriage of Weidner*, 338 N.W.2d at 355–56, and in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration"—the court's determination of what will be in the long-term best interests of the child. *In re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will do better in raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App.1985).

Having carefully reviewed the record in light of these guiding principles, we affirm the district court's decision awarding primary physical custody of the children to Tom. The record supports the conclusion that both parties would serve as suitable custodians for the children. However, we believe Tom is more adequately equipped to provide for the long-term best interests of the children. The record reveals Tom has provided the daily care for the children throughout Audrey's absences from the home. Under his care, the children are physically healthy and are doing well academically and socially.

Audrey contends Tom has tried to alienate the children from her and argues that a close relationship between both parents will not be promoted if the children are placed with Tom. The record does contain evidence supporting Audrey's claim that Tom has attempted to capitalize on Audrey's frequent absences from the home by portraying a negative image of Audrey to the children. We are concerned with Tom's actions. The ability of each parent to actively support the other parent's relationship with the child is an important factor in determining the physical custody arrangement. Iowa Code section 598.41(3)(e) (1991). More importantly, the ability of each parent to do so is instrumental in the successful mental, emotional, and social development of the children.

Our examination of the record, however, also reveals strong evidence indicating the children have maintained contact with both parents and have continued to build a strong bond with both parents. Accordingly, we do not believe placement of the children with Tom will result in a lack of active contact with and attention from both parents, as Audrey suggests. We are confident the parents will support each other's relationship with the children in an effort to promote the children's best interests.

Since Audrey is a suitable custodian of these children and since she has maintained an active interest in providing for the children's well-being, she is entitled to liberal visitation rights. This is particularly true since the parties live in close proximity to one another. We conclude Audrey's visitation rights shall consist of a

period from 4:30 p.m. on Friday until 8 p.m. Sunday every other weekend beginning the first Friday after this opinion is filed. In addition, Audrey shall enjoy mid-week overnight visitation privileges each Wednesday beginning at 4 p.m.

The holidays of Easter, Memorial Day, Fourth of July, Labor Day, Thanksgiving, Christmas Eve, Christmas Day, and New Year's Day shall be shared on an alternate basis with Audrey having visitation on Easter, Fourth of July, Thanksgiving, Christmas Day, and New Year's Day in even-numbered years, and Audrey having visitation Memorial Day, Labor Day, and Christmas Eve in odd-numbered years. Christmas vacation period shall begin the day that school is out and extend until Christmas Eve at 10 p.m. The Christmas Day vacation shall begin at 10 p.m. on Christmas Eve and terminate at 8 p.m. on New Year's Day. The Thanksgiving vacation shall include the Friday and the weekend following Thanksgiving. This provision for special holidays shall have priority over the every-other-weekend visitation awarded above.

Audrey shall have an additional right of visitation during the months of June, July, and August for up to four weeks which need not be consecutive. By May 1 of each year, Audrey shall notify Tom of when Audrey wishes to exercise this extra period of visitation. Any time the children are with Audrey for more than fourteen days, Tom shall be entitled to weekend visitation on the following weekend from Friday at 4:30 p.m. until Sunday at 8 p.m. In addition, Audrey shall be entitled to visitation on Matthew's birthday in odd-numbered years and Mark's birthday in even-numbered years. This right of visitation includes the right to have the other child present when the birthday of the sibling is celebrated. Tom shall enjoy the right of visitation of the children on Father's Day, and Audrey shall have the right of visitation of the children on Mother's Day.

■ Next, we address the issue of child support. The district court determined Audrey's net monthly income to be $1,211, but also found:

Her net monthly income will increase from the present sum of $1,211 due to the income producing property which will be awarded to her in the decree. Her post-decree net monthly income is difficult to ascertain with any reasonable degree of certainty at this time since she will also be incurring additional obligations pursuant to the decree.

However, despite recognizing this fact, the court then concluded Audrey's obligation should be "conservatively figured on [a] projected net income of $1,500 per month."

We disagree. Applying the Child Support Guidelines to a net monthly income which cannot be ascertained with any reasonable degree of certainty is improper. Instead, the guidelines should be applied to Audrey's current net monthly income. As Audrey correctly points out, there is no evidence that her income will be increased as a result of the income-producing property awarded to her since substantial debts have also been allocated to her.

If Audrey's income in fact changes in the future sufficiently to constitute a substantial change in circumstances, see Iowa Code section 598.21(8) (1991), as amended effective July 1, 1993, modification of the child support award can be sought at that time. Applying the guidelines, adopted effective December 31, 1990, to the district court's findings that Audrey's net monthly income is $1,211 and Tom's net monthly income is $3,198 reveals Audrey shall pay child support in the amount of $363.30 per month (thirty percent of $1,211).

■ Next, Audrey contests the district court's division of property. She contends that although the court found she should not be excluded from Tom's inheritance, she was nevertheless excluded. Iowa Code section 598.21(2) (1991) provides:

Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

In the present case, the court determined that excluding all the property inherited by Tom from the property division would be

inequitable to Audrey. We agree. We disagree, however, with Audrey's assertion that the court nevertheless excluded the inherited property from the property division.

The court awarded Audrey the balance due on a real estate contract for the sale of residential property in Plainfield, Bremer County, Iowa, which Tom inherited from his parents and later sold. The balance due on the contract as of November 1, 1991, was $37,310.67. After a thorough review of the entire record, we determine the court's property award to Audrey is fair and equitable. Consequently, we decline Audrey's request for spousal support based upon the property award to Tom.

 Finally, Audrey requests appellate attorney fees and costs. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App.1981). The parties shall pay their own attorney fees, and Tom shall pay the costs of this appeal.

**AFFIRMED AS MODIFIED.**