**In re the MARRIAGE OF Ann M. ENGLER and Lloyd L. Engler.**

**Upon the Petition of Ann M. Engler, Petitioner–Appellant,**

**And Concerning Lloyd L. Engler, Respondent–Appellee.**

No. 92–1818.

Court of Appeals of Iowa.

May 25, 1993.

As Amended May 27 and June 2, 1993.

Robert L. Day, Jr. of Day & Beacham, Dubuque, for appellant.

David J. Grace of Dickinson, Throckmorton, Parker, Manheimer & Raife, Des Moines, for appellee.

Heard by SCHLEGEL, P.J., and OXBERGER, C.J., and SACKETT, J., but decided en banc.

SACKETT, Judge.

Petitioner-appellant Ann M. Engler appeals that portion of her dissolution decree that places physical care of her daughter, eight-year-old Megan, with Megan's father, respondent-appellee Lloyd L. Engler. She contends physical care should be with her. We affirm.

Lloyd, who is 41 years old, and Ann, who is 40 years old, were married in 1978. Megan, their only child, is a good student, healthy but a bit overweight. Ann is a registered nurse and Lloyd is a farmer. Lloyd has a dairy herd, raises pigs and is a grain farmer. During the marriage the family lived in a very adequate farm home in Clayton County. Both Lloyd and Ann have been committed to their jobs and dedicated to Megan. Megan has spent considerable time during her growing up years with child care providers.

Ann was the organizer and ran the household. She took the primary responsibility for organizing Megan's activities and her child care. Ann has spent more growing up hours with Megan than has Lloyd. Ann has left the Clayton County farm and gone to Cedar Rapids where she lives in an apartment. She will have better employment opportunities in Cedar Rapids. Ann has siblings in the Cedar Rapids area. Ann has a close relationship with her family and has spent time with them during the marriage exclusive of Lloyd.

Lloyd is a conscientious person. He is well-known and very well liked in the Clayton County community where the parties lived and where he grew up. He has a strong network of support in the community. He has a close relationship with his mother who lives one mile down the road.

Ann's position that she should be primary caretaker focuses primarily on the fact she has spent more time with Megan during her early years than has Lloyd and she has been the person responsible for arranging her activities and her child care. She has set forth in detail the time she has

spent organizing and directing Megan's life from preschool to obtaining private swimming lessons when Megan was unhappy in public lessons. Ann is critical of the time Lloyd has devoted to his farm work.

Lloyd's position is it is most advantageous to keep Megan in the community with her lifelong friends and the trial court was correct in awarding him custody. He maintains he has an easygoing, loving relationship with Megan.

■ Our review in cases such as these is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7). We are not bound by these determinations, however, *Id.* Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

We agree with the trial court's conclusion that the custody issue here is "unusually difficult".

Because both parents are responsible, loving, and able to provide a good life for Megan, the issue the parties argue is really what lifestyle is better for the child.

Ann will raise Megan in an apartment in Cedar Rapids. Lloyd will raise her on a farm in rural Iowa. In Cedar Rapids, Megan will attend an urban school and in Clayton County, she will attend a rural school. In Cedar Rapids, she will have a relationship with cousins and in Clayton County, she will continue the friendships of lifelong friends and will be closer to her paternal grandmother. Her mother's home promises to offer Megan a very structured environment, while her father, who is less tense, will offer her a less structured environment. There are advantages and disadvantages to either lifestyle.

■ We do not award custody by determining whether a rural or urban Iowa upbringing is more advantageous to a child. We do not award custody based on hours of service for past care. We attempt to look to determine which parent will in the future provide an environment where the child is most likely to thrive. We are convinced this child will thrive in either environment.

■ The trial court had the parties before it and was able to observe their demeanor and was in a better position than we are to evaluate them as custodians. *See In re Marriage of Forest*, 201 N.W.2d 728, 730 (Iowa 1972). We defer to the trial court's judgment and affirm the decision of the trial court in its entirety.

**AFFIRMED.**

All judges concur except OXBERGER, C.J., and SCHLEGEL, J., who dissent.

OXBERGER, Chief Judge (dissenting).

I respectfully dissent.

I would award primary physical care of Megan to Ann.

In child custody cases, the best interests of the child is the first and governing consideration. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3), in *In re Marriage of Weidner*, 338 N.W.2d 351, 355–56 (Iowa 1983), and in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration," the court's determination of what will be in the long-term best interests of the child. *In re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will do better in raising the child. *In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App.1985). Gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *Id.* In order to insure continuity in the children's lives, we consider allowing the children to remain with a parent who has been a primary caretaker. *In re Marriage of Fennell*, 485 N.W.2d 863, 865 (Iowa App.1992).

The record is replete with testimony indicating Ann has served as Megan's primary caregiver since her birth. Following her

maternity leave, Ann cared for Megan until she left for work at 2:30 each afternoon. She arranged for and transported Megan to her child care provider each afternoon. During this time, Lloyd typically worked 7:00 a.m. to 9 p.m. seven days per week. Ann arranged for Megan's preschool and alone attended preschool orientation. Ann requested a change to day shifts so she would be able to care for Megan in the evenings. She arranged gymnastics classes for Megan and regularly attended parents observation nights and programs, again without Lloyd accompanying her. When Ann separated from Lloyd, she moved Megan with her.

From the record, it appears Lloyd's work responsibilities and devotion to his mother interfered with his time with Megan and Ann. It appears he was unwilling to refrain from eating daily noon meals with his mother and was unwilling to allow Ann to schedule an earlier evening meal in order that they may eat together as a family. Lloyd often traveled separately to family holidays, arriving late and leaving early. Lloyd rarely accompanied Ann and Megan on family vacations; even in winter he claimed he had winter farm chores. Lloyd did not attend parent/teacher conferences. In addition, the district court found Lloyd was not likely to plan activities specifically structured for Megan but was more likely to include her in his own activities, including socializing with his friends. We do not believe socializing with Lloyd's friends in lieu of structured, age-appropriate activities is in Megan's best interests.

In support of its decision to award physical care of Megan to Lloyd, the district court stated it was forced to consider "fine points" in making the custody award. However, the substance of the fine points is not evident from the order or the record. The district court stated both parties were "very fine, upstanding individuals and highly qualified to fulfill their parenting responsibilities."

I am unable to support the majority's affirmance of the award of physical care of Megan to Lloyd. The record simply does not support that conclusion. It is clear to me that Lloyd's interest in parenting Megan began with the parties' separation. For the eight preceding years, Ann successfully provided for all of Megan's basic needs. I would award physical care of Megan to Ann.

SCHLEGEL, J., joins dissent.