In re the MARRIAGE OF Jonni M. WESSEL and Jon S. Wessel,

Upon the Petition of Jonni M. Wessel, Appellee,

And Concerning Jon S. Wessel, Appellant.

No. 93–1221.

Court of Appeals of Iowa.

May 26, 1994.

Janice Hanrahan Roemer, Davenport, for appellant.

Dennis D. Jasper of Stafne, Lewis, Jasper, Alexander & Preacher, Bettendorf, for appellee.

Heard by HAYDEN, P.J., and CADY and HUITINK, JJ.

HAYDEN, Presiding Judge.

Jon Wessel appeals the district court's ruling granting physical custody of Jessica Wessel to Jonni Wessel.

Jon and Jonni Wessel were married June 11, 1988. At the time of their marriage, their daughter, Jessica, was six months old. Jonni filed her petition for divorce on June 30, 1992. The five-year marriage was dissolved in June 1993.

At the time of trial, Jonni was twenty-nine years of age, a high school graduate, and unemployed. She receives ADC, food stamps, and child support payments. She is the custodial parent of two children from a previous relationship and one child from a relationship occurring after the parties separated.

At the time of trial, Jon was thirty-two years of age, a college graduate, and a C.P.A. He has been employed at the Rock Island Arsenal for nine years, has a good work record, and earns a good income. He has consistently paid child support for a daughter by a previous marriage. With the exception of the two months when an ex parte custody order was in effect, Jon had custody of Jessica from March 1992 (date of separation) until June 22, 1993.

The decree awarded physical care of Jessica to Jonni, and Jon was awarded visitation including three-day weekends, agreed holidays, and four weeks in the summer. Jon appeals, arguing he would make a better custodial parent because he has steady employment, a history of financial responsibility, good parenting skills, and better moral character than Jonni. Jonni requests attorney fees on appeal.

■ In this action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ In child custody cases, the best interests of the child is the first and governing consideration. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3), in *In re Marriage of Weidner*, 338 N.W.2d 351, 355–56 (Iowa 1983), and in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration," the court's determination of what

will be in the long-term best interests of the child. *In re Marriage of Vrban,* 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will do better in raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *In re Marriage of Ullerich,* 367 N.W.2d 297, 299 (Iowa App. 1985).

We determine it is in the best interest of Jessica to award primary physical custody to Jon. This is not a determination we make easily or arbitrarily. However, a thorough review of the record indicates Jon is in the best position to provide for the current and long-term best interest of Jessica.

It is evident great weight was placed on the fact Jonni acted as the primary caregiver for Jessica during the time she was married to Jon. In fact, a substantial part of the evidence presented by Jonni revolves around her role as a mother working in the home and Jon working in the traditional role of providing financial support. The fact that one parent has been the primary caretaker of minor children prior to legal separation does not assure that parent will be awarded primary care. *In re Marriage of Wilhelm,* 491 N.W.2d 171, 172 (Iowa App.1992); *In re Marriage of Toedter,* 473 N.W.2d 233, 234 (Iowa App.1991). Jonni believes because she was home with Jessica she provided her with greater care and is therefore the preferable custodian. However, the record is replete with evidence which indicates Jonni's role as a stay-at-home mother did not necessarily render her the superior caregiver.

Of primary importance is the fact Jon was granted temporary physical custody of Jessica and cared for her for ten months prior to the court awarding physical custody to Jonni. Additionally, Jonni failed to demonstrate any degree of responsibility with regard to her family and her financial situation.

The evidence shows Jessica has three siblings. All three of these siblings have different fathers, and the third was conceived shortly after Jon and Jonni's separation. Following the separation, Jonni began receiving welfare aid. However, this aid was cut off at various times and was to be cut off permanently due to Jonni's refusal to cooperate with proper procedure. On more than one occasion, Jonni either refused to identify or could not identify the father of any of her other three children. Because of this, Jonni's support was cut off on more than one occasion and was generally very sporadic. In addition, Jonni is not currently employed and has not demonstrated any interest in obtaining employment. At the time of trial, Jonni was without phone service and additionally had been without electricity for failure to pay her bill. Various witnesses testified because she was without a phone it was very difficult to reach her and on more than one occasion school officials had found it necessary to contact Jon because Jonni could not be reached.

Jonni also has demonstrated instability in her life with regard to her living arrangements. Following the separation, she lived in a variety of different locations. For a short period of time, Jonni and the children rented a home on Arlington Street. The landlord and Jonni agreed she would pay $100 per month and would perform repair work around the home. When Jonni failed to do the repair work, the landlord requested she vacate the premises. At trial, the landlord testified the home was not maintained well, identifying such problems as trash on the back porch, food left on the stove in the kitchen, and a window broken out in the attic. The landlord opined the broken glass presented a particularly dangerous situation for the children because the glass was left lying in the back yard where the children played.

Jonni also demonstrated irresponsibility with regard to her financial situation. At the time of separation, Jon gave Jonni a truck for her use believing the two were working towards a reconciliation. Jonni obtained a loan under false pretenses, claiming she possessed title to the truck and using the truck as collateral. Jonni forged Jon's name on the check and used the funds without ever informing Jon she had obtained the loan. When Jonni eventually defaulted on her payments, the truck was repossessed. Jon even-

tually regained possession of the truck and then provided it for Jonni's use because she did not have any other mode of transportation.

Jonni has also demonstrated immaturity with regard to her social life. While the couple was still married, Jonni began working at the 220 Club bartending and waitressing. The evidence showed she worked approximately three nights a week. She would leave for work at approximately 5 p.m. and return home between 3 a.m. and 5 a.m. The evidence showed she was often intoxicated when she returned. Jonni further testified she also went out on Wednesdays and Sundays normally. While Jonni worked and went out, Jon was generally the primary caretaker for the children. Jonni even testified that while she was no longer employed she still went out twice a week. She indicated she could afford to pay a baby-sitter even though she could not afford to maintain a telephone in her home.

This court fully recognizes John has had some difficulty in devoting sufficient time to his children. However, Jon had physical custody of Jessica ten months prior to the decree being entered. During this time period, the evidence shows Jon made great efforts to develop a good relationship with his daughter and provide her a nurturing environment in which to live. Jon has also demonstrated responsibility from a financial standpoint. He has been employed for nine years as an accountant and will be better able to provide for Jessica's long-term needs. In making the determination of with which parent the children's best interests will be served, "our objective is to place the children in the environment most likely to bring the children to healthy physical, mental and social maturity." *In re Marriage of Bartlett,* 427 N.W.2d 876, 877 (Iowa App.1988). It is our conclusion Jon, more than Jonni, has demonstrated responsibility and stability in those parental efforts directly affecting the immediate welfare of Jessica. Jon has been responsible for Jessica's primary care. He has assured adequate supervision for Jessica either personally or through arrangements with third parties. Conversely, Jonni has, at times, placed her personal interests above those of her children. We cannot ignore this distinction between the parties with regard to their parental responsibility. *See In re Marriage of Long,* 520 N.W.2d 631 (Iowa 1994). We hold Jessica's overall well-being will best be served with primary physical custody awarded to Jon. Child custody should be quickly fixed and little disturbed. *In re C.W.,* 491 N.W.2d 171, 172 (Iowa App.1992) (citations omitted).

Jonni has requested attorney fees on appeal. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). Both parties shall bear their own costs and attorney fees.

We remand to the trial court for determination of visitation by Jonni. The trial court shall enter further orders in conformance with this opinion. We do not retain jurisdiction.

**REVERSED AND REMANDED.**