In re the MARRIAGE OF Elizabeth K. DONLY and Kevin James Donly.

Upon the Petition of

Elizabeth K. Donly, Appellant,

and Concerning

Kevin James Donly, Appellee.

No. 94–505.

Court of Appeals of Iowa.

Jan. 23, 1995.

Randall B. Willman of Leff, Haupert & Traw, Iowa City, for appellant.

Sharon A. Mellon of Mellon & Spies, Iowa City, for appellee.

Heard by HAYDEN, P.J., and HABHAB and HUITINK, JJ.

HAYDEN, Presiding Judge.

Kevin and Elizabeth Donly were married on July 2, 1983. The couple met while Elizabeth was a dental hygienist student at the University of Iowa and Kevin was a first-year dental student at the university. During their first year of marriage, Elizabeth worked as a dental hygienist while Kevin completed his final year of dental school. Kevin graduated in 1984 and then pursued a master's degree in pediatric dentistry, which he received in 1986.

Following completion of his master's program, Kevin and Elizabeth decided to move to Houston, where Kevin accepted a position as an assistant professor at the University of Texas at Houston. Elizabeth moved to Houston before Kevin in order to find housing and coordinate the move. While at Houston, Kevin decided he wanted to spend considerable time on his career in order to obtain his credentials for tenure before they had a child. Their son, Zachary, was born on August 29, 1989. One month later, Kevin received his tenure.

Shortly after Zachary's birth, Kevin and Elizabeth began to have marital difficulties. In October 1990 Kevin moved out of their home and into an apartment nearby. Around this time, Kevin began a relationship with Adriana Segura, a student at the dental

school in Houston. In 1991 Kevin was offered a tenured position at the University of Iowa dental school and agreed with Elizabeth the move back to Iowa would be good for the entire family. Elizabeth moved back to Iowa City a month before Kevin in order to find housing. Ms. Segura also decided to accept a residency in pediatric dentistry at Iowa.

By December 1991 Kevin and Elizabeth decided the marriage would not work, and Kevin moved to an apartment. They worked out a child-care schedule for Zachary, with each parent caring for him two days per week and every other weekend, plus occasional dinners together during the week. Elizabeth began to increase her working hours and entered Zachary in the Good Shephard Day Care Center. Kevin resumed his relationship with Ms. Segura.

In December 1992 Elizabeth was accepted to the masters in dental hygiene program at the University of Missouri at Kansas City. On January 25, 1993, Elizabeth filed a petition for dissolution of marriage. In May 1993 she entered the master's program and moved to a Kansas City suburb along with Zachary. From July 1993 until the time of trial, Elizabeth and Kevin shared Zachary's care on a two-week/two-week basis. At trial, Ms. Segura testified she visited Kevin's apartment three or four nights each week and stayed overnight at least six times while Zachary was present. In January 1994 Kevin bought a home in Iowa City.

Following trial, the trial court awarded primary physical care of Zachary to Kevin. Elizabeth appealed. Elizabeth contends the trial court erred in awarding custody to Kevin. She argues she is the parent who can most effectively attend to the child's emotional and psychological well-being. Elizabeth also requests appellate attorney fees.

## I. *Scope of Review.*

■ Our review in this matter is de novo. Iowa R.App.P. 4. In child custody cases, the best interests of the child is the first and governing consideration. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3), in *In re Marriage of Weidner*, 338 N.W.2d 351, 355–56 (Iowa 1983), and in *In re Marriage of*

*Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration"—the court's determination of what will be in the long-term best interests of the child. *In re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will do better in raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App. 1985).

## II. *Custody.*

■ The trial court concluded Kevin could provide a more stable, wholesome, and safe environment for Zachary than Elizabeth could. For the reasons given below, we agree and affirm the trial court's ruling.

Zachary is blessed to have two good parents who both love him very much. Choosing between them is difficult. Under this record, we determine Kevin to be the better choice. Kevin is a friendly, outgoing person who has many friends. His love of children led him to specialize in pediatric dentistry. This background, coupled with his personality, has enabled him to establish clear and consistent boundaries for Zachary. The trial court found Kevin "approaches all stressful situations calmly and attempts to solve problems logically and reasonably." Elizabeth, on the other hand, "seems to be more impulsive when confronting difficult situations."

Witnesses testified Zachary is so well behaved he requires little discipline by Kevin. Few occasions have arisen where Kevin has to reprimand or discipline him. Elizabeth tried to paint Kevin's parenting technique as "intimidating," and yet those who have consistently observed Kevin and Zachary together do not support this view. All describe Zachary as a happy, well-adjusted, friendly, and secure child, not a child who cowers or is frightened or intimidated by his father.

Our ruling also allows Zachary to remain in Iowa City. Elizabeth and Kevin made a mutual decision to return to Iowa City because, as the trial court noted, "they recog-

nized the positive aspects of raising Zachary in this area, including educational opportunity, cultural activities, and the geographical location of Zachary to both [parents'] extended families.... In Iowa City Zachary attends Good Shephard Preschool, which is staffed by teachers who concentrate on education rather than just providing daycare services." Zachary's adjustment and progress at Good Shephard has been excellent. He lives in a good neighborhood close to school, where a number of his schoolfriends also live.

Elizabeth argues Kevin's relationship with Ms. Segura demonstrates instability on his part. She bases this claim on the facts Kevin has spent time with Ms. Segura in Zachary's presence. Ms. Segura spent six nights at Kevin's when Zachary was there, and Elizabeth is concerned Zachary might become attached to Ms. Segura.

The trial record demonstrates Kevin has many friends, both men and women. Many of these friends are Zachary's friends as well. Neither Ms. Segura or Kevin has ever attempted to present Ms. Segura as a "mother figure." Ms. Segura did admit to spending the night at Kevin's on six occasions when he lived in Hills. She explained because the weather became too bad to travel or she and Kevin worked late at his apartment and fell asleep. On these occasions, Ms. Segura left very early before Zachary awoke. She admitted this was not good practice and not something she would do habitually. Kevin testified he and Ms. Segura would not cohabit because neither he nor she believed it to be proper.

Several witnesses testified they have never known Kevin to speak negatively about Elizabeth. In fact, Kevin has emphasized the importance of Elizabeth's role in Zachary's life. During the periods of separation, Kevin made a point of seeing he, Elizabeth, and Zachary spent time together for Zachary's sake. Kevin, throughout his testimony, emphasized he wanted "to be together [with Elizabeth] in the system of raising Zachary." When asked what role he wanted Elizabeth to play in Zachary's life after the dissolution, Kevin replied,

The same role I've always wanted ... I want her to be a critical part of his life. I know she loves him, and I know he loves her. I think we can get along well ... I think we would both be very active in everything all the way through his life.

We agree and concur with Kevin's outlook. The trial court's ruling on this issue is affirmed.

### III. *Attorney Fees.*

Elizabeth requests appellate attorney fees. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). Based on these factors, we award Elizabeth $1000 in attorney fees. Costs on appeal are taxed to Kevin.

Any other issues the parties may have raised, if not covered by this opinion, are without merit. Judgment of the trial court affirmed.

**AFFIRMED.**