# IN THE COURT OF APPEALS OF IOWA

No. 14-0671
Filed February 11, 2015

IN RE THE MARRIAGE OF COURTNEY LYNN BUCKINGHAM
AND JAMES JOSEPH BUCKINGHAM

Upon the Petition of
**COURTNEY LYNN BUCKINGHAM,**
      Petitioner-Appellant,

And Concerning
**JAMES JOSEPH BUCKINGHAM,**
      Respondent-Appellee.

_____

Appeal from the Iowa District Court for Decatur County, Lawrence P. McLellan, Judge.

A mother appeals the district court's ruling denying her request to modify joint physical care. **AFFIRMED.**

Pamela A. Vandel, Des Moines, for appellant.

Verle W. Norris, Corydon, and Dustria A. Relph of Chambers & Relph Law Firm, Corydon, for appellee.

Heard by Danilson, C.J., and Potterfield and Bower, JJ.

**BOWER, J.**

Courtney Buckingham appeals the district court decision denying her application for modification of the joint physical care provision in the decree that dissolved her marriage to James Buckingham. Courtney also challenges the court's ruling excluding the rebuttal testimony of one of the children. Finally, Courtney contends the district court abused its discretion in declining to award her trial attorney fees.

After our de novo review, we agree with the district court's determination Courtney has not shown a substantial change of circumstances that would justify modification of the joint physical care provision. We additionally find Courtney has not met her burden of proving she would provide superior care and find no abuse of discretion in the court's exclusion of rebuttal testimony. We affirm the district court's denial of an attorney fee award to Courtney and also decline to award Courtney appellate attorney fees.

**I. Background Facts & Proceedings**

Courtney and James married in 2003, and have three minor children.[1] Courtney has completed one year of college and works full time at Casey's General Store. James has a college degree and has worked for the same employer for eleven years. Earlier, James's employer frequently required him to be out of town during the week to work on location. For the last eighteen months, James has set his own schedule and not travelled as much.

---

[1] During the marriage, James adopted Courtney's son, I.B., at age four or five.

A stipulated decree for the dissolution of marriage was filed on December 19, 2008. The parties agreed to and were awarded joint legal custody and shared physical care of their sons. Both parties currently live in the Leon, Iowa area. James grew up in the area, and Courtney has lived there for about ten years.

The decree ordered physical care to alternate every four days. Courtney and James agree they have never followed that schedule. Rather, James took care of the children every weekend from Friday after school until he dropped them off at school on Monday morning. Thus, the children spent three nights with James and four nights with Courtney each week. Courtney testified she did not think the four night/three night schedule constituted "shared parenting."

After the dissolution, James paid the mortgage on the prior marital residence for six months to prevent the children from having the additional upheaval of moving, to allow Courtney to transfer the house into her name, and to protect his credit rating. James also voluntarily paid for a new transmission for Courtney's car. James has consistently paid child support to Courtney. Courtney has the children's medical bills sent to James, and he pays them.

James has numerous relatives in the Leon area. When James has the boys they go camping, hunting, and swimming with their cousins and extended family. At the time of the modification trial, James and Courtney's children were fourteen—I.B., ten—G.B., and seven—C.B. James's grandmother lives across the street from Courtney, and Courtney testified:

> The boys go over and visit. I send them over to . . . talk to her and things like that. And then [James's] parents are over there

occasionally . . . so they ask to go over and talk to . . . whoever is over there, which is fine with me.

James is now married to Darci, who has three children, two boys near G.B.'s age and a kindergarten-age daughter. Darci's children live with James and Darci part of the time. James and Darci live in a five-bedroom residence in the country but close to Leon. I.B. and Darci's daughter each have their own bedrooms, while G.B. and C.B. share a bedroom and Darci's two boys share a bedroom.

Courtney's house in Leon is within walking distance to both the schools and the swimming pool, and seven-year-old C.B. walks to school. During the five years after the dissolution, Courtney has had four friends, including one with three children, live with her at various times. Also, at one point Courtney had an intimate partner living with her for one year. Currently, Courtney's sister lives with her.

James testified he did not object to Courtney's live-in visitors because they were all "good people." James did express concern, however, "it seems like a lot of change for the kids to deal with and roommates with children; and for a three-bedroom house, it seems kind of crowded."

**A. Modification Petition**. Courtney filed to modify physical care in August 2013. She requested physical care be granted to her with James having visitation on alternating weekends and three weeks in the summer. Courtney's petition stated she "intends to move to Des Moines, Iowa, to expand her employment opportunities and to provide her children with more educational, sports, and extracurricular activities." At trial, Courtney testified she was in court

"to obtain the court's permission to move to the Ankeny area of Iowa" as the move would expand her and the children's opportunities. Courtney intended to work at a Casey's and continue her education at Des Moines Area Community College (DMACC).

Besides moving, Courtney's petition listed other material and substantial changes in circumstances: (1) James's failure to follow the alternating four-day visitation periods; (2) Courtney having the children on only one Mother's Day; (3) the children are not safe in James's care; (4) James does not allow the children to contact her when they are in his care; and (5) James does not take the children to church on weekends. Courtney requested a corresponding adjustment in child support.

Prior to trial, Courtney rejected James's offer to alternate physical care on a weekly basis so that Courtney also would have time with the children on alternate weekends.

**B. Modification Hearing.** In March 2014 the modification hearing commenced. Every witness indicated both Courtney and James were good parents with courteous, well-behaved children.

Regarding Courtney's claim of a lack of time with the children on the weekends, Courtney admitted James allowed her to take the children out of town to visit her mother when she asked. She stated these visits occurred, at a minimum, one weekend every other month to monthly. Courtney also acknowledged she did have visitation on Mother's Day one or two additional times over the one visitation alleged in her petition. Courtney acknowledged her

moving-to-Des-Moines proposal would be "significantly diminishing the time [James] spent with his children." Further:

> A. . . . But I would like to have the weekend time with my children every other weekend, which is not . . . .
> Q. So, if you switched to an alternating week-to-week schedule . . . that would give you weekends, wouldn't it. A. Yes.
> . . . .
> Q. And would that be acceptable to you? A. No.
> Q. Why not? A. . . . . Because it wouldn't give me the opportunity to provide extra opportunities to my children and myself.

Courtney questioned the education quality and level of activities the children have in Leon—Central Decatur School District. James presented contrary evidence from school employees and testified to the children's activities.

On cross-examination concerning her schooling, Courtney admitted Graceland University is closer than DMACC—only fifteen miles away—and so is Southwest Iowa Community College—twenty minutes away—"I could attend I'm sure." Courtney admitted she had not looked into financial aid that might be available to her at either of those schools. At first, Courtney stated those schools did not have classes in the "skills I would like to acquire," but upon further questioning, she testified, "Yes, they do." Courtney also testified: "Q. So you just would rather move to Des Moines and remove the children from their dad; right? A. I would like to have custody changed so that I can move to Des Moines and be able to attend college and provide opportunities for my children, yes."

At the time of the hearing, Courtney, age thirty-two, worked at the Casey's General Store in Leon. Courtney's manager testified Courtney was a good employee and believed Courtney could transfer to a Casey's in Des Moines if a

position was available. However, the manager also testified to several incident reports filed against Courtney for rude behavior to customers.

While Courtney presented evidence of her hourly pay at the Casey's in Leon, she produced no evidence of her potential wages at a Casey's store in Des Moines, no evidence her pay would be greater than her current wage in Leon, and no evidence she had actually obtained a new job in Des Moines. She also did not present any evidence showing the present availability of positions at Casey's in Des Moines. Courtney explained she got paid more for working overnight shifts in Leon. However, she did not work overnight primarily on the weekend; "I work them during the week."[2] After our de novo review, we agree with the district court's finding: "Based on all the evidence, Courtney did not establish that she would be able to secure better employment in the Des Moines area that would then allow her to provide superior care for her children."

Courtney testified James and C.B. have a good relationship. Courtney stated G.B. is happy as long as there is an activity to do, and he loves sports. She also testified to an incident with G.B. and Darci's boys that caused her concern. After the incident, Courtney took G.B. to counseling with Mary Hilliard, and those sessions were completed well before trial. James presented evidence showing G.B. and Darci's sons are Facebook friends and take the initiative to communicate with each other when they are not together. Brian Carson, the juvenile court school liaison for Central Decatur knows all the boys from school

---

[2] We note that although there are additional hours available on the weekend, Courtney elects to work the hours when she has the children.

activities and is in the building every day. He testified Darci's sons are "normal, typical ten-eleven-year-old boys."

Once James learned about G.B.'s sessions with counselor Hilliard, he was supportive and also met with the counselor. As to the issues with G.B., Hilliard testified James's actions were shortsighted but the incident "was handled appropriately," and James "acknowledged that he learned his lesson from that." After our de novo review of the record, we agree with the district court's conclusion the "incidents that arose to cause this tension [with G.B.] appear to have resolved."

Courtney testified to incidents between James and I.B. that caused the parties' relationship to deteriorate. Courtney stated that when I.B. was at James's house, he was asked to act as the babysitter and he did not like being in charge. James testified I.B. is no longer acting as a babysitter.

At some point in 2013, I.B. violated James and Darci's privacy and inappropriately shared a picture with Courtney. Instead of contacting James and acting like a mature parent, Courtney admitted she shared the picture with friends by email. When James found out two weeks later, he was angry. Counselor Hilliard testified James's anger was "a natural response" to the "invasion of privacy and then to share that in a public way is not okay."

On another occasion James believed I.B. was lying to him and broke I.B.'s cell phone. I.B. responded by refusing to go to James's house on the weekends. Courtney testified James asked for her help to get their relationship back on track but she and James disagreed on the best way to reestablish James's visitation

with I.B. During the November mediation prior to trial, James suggested I.B. attend counseling, and counseling with Hilliard then commenced the next month. James also attended one session with I.B. Courtney testified she "had talked about getting I.B. counseling. I just hadn't scheduled anything yet." Courtney, James, and Hilliard all testified additional counseling would be helpful to I.B.

Hilliard testified I.B. feels responsible at both houses and does not like the increased responsibility placed on him at James's house in the country. As to the cause of I.B.'s issues, Hilliard explained: "I think it's caused by increased anxiety about this whole custody issue, and kids handle it differently. And he's sort of caught in this loyalty struggle, and he's probably not thinking enough . . . about school and . . . his own business." Hilliard opined James "cared," in contrast to other fathers who have "come in at that point and be sort of bullies, and he didn't do that." Hilliard also stated James "sees himself as more as a disciplinarian," however, he has "indicated a willingness to learn" to be less authoritative and more diplomatic/sensitive.

Hilliard also testified James and Courtney could benefit from counseling to improve their communication and trust.

**C. Modification Ruling.** After observing the parties, witnesses, and hearing the testimony, the district court found: "It was obvious to this court . . . that Courtney and James love their children and both parents provide quality care to their children." The district court found Courtney had not met her burden to show a material and substantial change of circumstances since entry of the decree. The court also found "Courtney failed to establish that she could provide

superior care to the children." The court modified the shared-care-parenting schedule to a weekly rotation "beginning on Friday evenings of each week after the end of school on that day." The court ordered the parties attend additional counseling sessions that Hilliard testified would be helpful to the family. The court ordered the parties to pay their own attorney fees and to share equally in the costs. Courtney now appeals.

## II. Standards of Review

This modification action was tried in equity, and our review is de novo.[3] Iowa R. App. P. 6.907. We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by those findings. Iowa R. App. P. 6.904(3)(g). This standard of review recognizes the fact the district court has an opportunity to view, firsthand, the demeanor of the parties. *In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998).

We review evidentiary rulings for an abuse of the court's broad discretion. *Horak v. Argosy Gaming Co.*, 648 N.W.2d 137, 149 (Iowa 2002). Reversal is warranted only if the court clearly abused its discretion to the complainant's prejudice. *Id.*

## III. Modification of Physical Care

Preliminarily, we address Courtney's claim the parties' four night/three night schedule was not shared care and in actuality, she already had physical care of the boys. Although that schedule did not provide James "with exactly equal residential time, joint physical care 'does not require that the residential

---

[3] We find no merit to Courtney's claim our review should also be at law.

arrangements be determined with mathematical precision.'" *In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009) (quoting *In re Seay*, 746 N.W.2d 833, 836 (Iowa 2008)); *see In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007) ("Joint physical care anticipates that parents will have equal, or roughly equal, residential time with the child."). Here, James shared parenting time with Courtney, maintained a home for the children, and provided routine daily care for them. *See Brown*, 778 N.W.2d at 51. Thus, the care schedule shows the parties have, in fact, shared physical care of the children over the past five years.

Courtney contends the district court should have modified the parties' dissolution decree to grant her physical care of their three children. Specifically, "sufficient evidence was presented to the court regarding James's inappropriate care or supervision while the children were in his custody, I.B. and G.B.'s fear regarding James, James's alienation of I.B., [and the] recent strain in communication and co-parenting between Courtney and James."

The objective of physical care "is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Changing physical care of children is one of the most significant modifications that can be undertaken. *See In re Marriage of Thielges*, 623 N.W.2d 232, 236 (Iowa Ct. App. 2000). The parent seeking to modify the physical care provision of a dissolution decree must prove "there has been a substantial change in circumstances since the time of the decree not contemplated by the court when the decree was entered, which is more or less permanent and relates to the

welfare of the child." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004). In addition, the parent seeking to modify physical care has a "heavy burden" and "must show the ability to offer superior care." *Id.*; *see In re Marriage of Spears*, 529 N.W.2d 299, 301 (Iowa Ct. App. 1994) (stating "once custody of the children has been fixed, it should be disturbed only for the most cogent reasons"). The controlling consideration is the children's best interests. *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007).

Upon our de novo review of the record, we agree with the district court that Courtney has not met these standards. Courtney has the opportunity to continue her college education at either of two nearby colleges. We note, generally, the children have done well in their current school system, the only system they have known, and are involved in activities. We also note continuing the shared-care arrangement will allow the children to develop relationships with their step-siblings. In the shared-care arrangement, the children benefit from extended-family activities—including walking across the street to visit their grandparents and great-grandmother. A further consideration weighing against modification is the fact Courtney's proposal would significantly diminish James's parenting time, to the children's detriment. *See In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986) (stating the best interests of children include "opportunity for a continuous relationship with both parents"). We adopt the district court's analysis:

> Courtney failed to establish that the best interests of the children would be served if they were moved from Leon to the Des Moines area. *See, e.g.*, *In re Marriage of Engler*, 503 N.W.2d 623, 625 (Iowa Ct. App. 1993) ("We do not award custody by

determining whether a rural or urban Iowa upbringing is more advantageous to a child."). While there may be more job opportunities for Courtney in Des Moines, although she failed to present any evidence of jobs she sought, the court's role is not to decide custody issues based upon the best interests of the parents. *York v. York*, 67 N.W.2d 28, 31 (Iowa 1954) ("[T]he welfare of the children is the controlling consideration and its superior to the claim or convenience of either parent."). The court's role is to make custody decisions based upon what is in the best interests of the children. In this regard, Courtney failed to establish a move to Des Moines at this time was in the best interests of the children.

In addition, we conclude the record does not establish Courtney met her burden to show she can render superior care. Our review of the record shows both parents to be loving and caring. James has maintained steady employment for eleven years with the same employer. The children have many relatives living in the area. Courtney's living arrangements have changed several times since the dissolution with different people moving in and out of her three-bedroom home.

The incident causing tension between James and G.B. has resolved. It was James, not Courtney, who sought out counseling for I.B., and the district court ordered James to pay for additional, post-ruling counseling. We recognize parents have some difficulties while their children navigate through their teenage years. We agree with the district court's statement that "the issue with I.B. may be resolved with additional counseling."

Finally, while Courtney and James have strained lines of communication, developed only recently, the record does not cause us to conclude their "relationship is so volatile that shared physical care should be modified." Thus,

we affirm the decision of the district court denying Courtney's request to modify the physical care provision of the parties' dissolution decree.

## IV.  Rebuttal Witness

Courtney claims the district court abused its discretion when it denied Courtney's request to have I.B. testify as a rebuttal witness.

At trial, James resisted Courtney's effort to have I.B. testify, stating he had applied "for a guardian ad litem to be appointed to these children to be an objective person to . . . present their view to the court."  Courtney had then resisted, claiming Hilliard "would be a far more appropriate person to testify on behalf of the children."  As a result, no guardian was appointed, and Hilliard testified.

In denying Courtney's request to have I.B. testify, the court noted her resistance to and the resolution of the guardian-ad-litem issue.  The court also found Hilliard had already testified about many of the subjects Courtney listed as the reasons necessitating I.B.'s testimony.  The court concluded: "I don't feel it's in [I.B.'s] best interest to have to testify in these proceedings in a dispute that essentially is between his parents."

We find no abuse of discretion and agree with the district court's analysis. Hilliard testified I.B.'s issues are "caused by increased anxiety about this whole custody issue."  Further, the district court has the inherent power to protect children in custody proceedings and not allow them to testify.  *In re Marriage of Abkes*, 460 N.W.2d 184, 186 (Iowa Ct. App. 1990).

## V. Attorney Fees

Courtney first challenges the district court's order requiring each party to pay their own attorney fees.

Iowa Code section 598.36 (2013) states, in a modification proceeding, the court "may award attorney fees to the prevailing party." We review the district court's denial of attorney fees for abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). This means we only reverse if the court's ruling rests on grounds that are clearly unreasonable or untenable. *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 73 (Iowa 2011). Courtney was not the prevailing party at trial. Accordingly, we find no abuse of discretion.

Second, Courtney requests an award of appellate attorney fees, emphasizing James's superior ability to pay. James responds he was forced to defend the district court's decision on appeal.

An award of appellate attorney fees is not a matter of right, but rests within our sound discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). "We consider the needs of the party making the request, the ability of the other party to pay," and the relative merits of the appeal. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Courtney has not prevailed on appeal. Considering the foregoing factors, we decline to award Courtney appellate attorney fees. Costs of this appeal are assessed one-half to each party.

**AFFIRMED.**