Jayme Joe NEUBAUER,
Petitioner–Appellee–Cross–Appellant,

v.

Myrna Rae NEWCOMB,
Respondent–Appellant
Cross–Appellee.

No. 87–690.

Court of Appeals of Iowa.

March 9, 1988.

Virginia L. Lynns, Legal Services Corp. of Iowa, Des Moines, for respondent-appellant/cross-appellee.

Steven C. Schrader, Decorah, for petitioner-appellee/cross-appellant.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

Respondent, Myrna Rae Newcomb, appeals the order of the district court which granted custody of the parties' six-year-old son, Justin Neubauer, to the petitioner, Jayme Joe Neubauer. Jayme cross-appeals, asserting the court erred by ordering him to pay the court costs and $1,000 of Myrna's attorney's fees.

I. *Custody.* This action was brought under Iowa Code chapter 598A (the Uniform Child Custody Jurisdiction Act) since the parties have never been married in the course of their sporadic relationship of nine years. However, the criteria governing our determination of custody are the same, regardless of whether the parents are dissolving their marriage or are unwed. *Heyer v. Peterson,* 307 N.W.2d 1, 7 (Iowa 1981). Our review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7).

The parties do not dispute the district court's finding that they are not capable of working together in order to make joint custody possible. Our decision regarding which parent should have sole custody is ultimately made by determining under the whole record which parent can minister more effectively to the long-range best interests of Justin. *In re Marriage of Bowen,* 219 N.W.2d 683, 687–88 (Iowa 1974). In reaching our decision, we take into account the factors enumerated in *In re Marriage of Winter,* 223 N.W.2d 165 (Iowa 1974), as follows:

1. The characteristics of each child, including age, maturity, mental and physical health.
2. The emotional, social, moral, material, and educational needs of the child.
3. The characteristics of each parent, including age, character, stability, mental and physical health.
4. The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child.
5. The interpersonal relationship between the child and each parent.
6. The interpersonal relationship between the child and its siblings.
7. The effect on the child of continuing or disrupting an existing custodial status.
8. The nature of each proposed environment, including its stability and wholesomeness.
9. The preference of the child, if the child is of sufficient age and maturity.
10. The report and recommendation of the attorney for the child or other independent investigator.
11. Available alternatives.
12. Any other relevant matter the evidence in a particular case may disclose.

*Id.* at 166–67.

Our review of the record in light of these factors leads us to conclude the district court was correct in granting custody of Justin to Jayme. Our decision in this regard was not an easy one. Myrna is unquestionably a caring, loving mother and has been Justin's primary caretaker for the majority of his life. Jayme's opportunities to visit and care for Justin have been sporadic, due in large part, we believe, to the erratic and acrimonious nature of the parties' relationship. Nonetheless, Jayme and his parents also have a close relationship with Justin. Both parties have exhibited some serious personality flaws. Both have apparently experienced problems with substance abuse; both have apparently been rather promiscuous. Jayme acknowledges he has hit Myrna in the course of heated arguments. Myrna, who has found herself in other abusive relationships, acknowledges she has had mental and emotional problems. She has several times threatened to commit suicide and, on one occasion, threatened to harm Justin, as well. One "threat" reached the advanced stage of actually cutting her wrists. Both parties generally claim their physical or emotional excesses were provoked by the other party.

Presently, Myrna is attending secretarial classes and Jayme is an investigator for the Decorah Police Department. It is not disputed Jayme's employment is more secure than Myrna's. Jayme has been employed in his current position for twelve years; Myrna has worked intermittently as a nurse's aide and at a convenience store but, as stated, is not currently employed. Myrna does not have any definite future plans regarding employment, particularly as to geographical location.

This is a close case but, on balance, we conclude Jayme can minister more effectively to the long-range best interests of Justin. We affirm the district court on the custody issue.

II. *Court Costs and Attorney's Fees.* Jayme asserts the district court erred by ordering him to pay the court costs and $1,000 of Myrna's attorney's fees.

Iowa Code section 625.1 provides, "Costs shall be recovered by the successful party against the losing party." Nonetheless, in an equity action the trial court has a large discretion in the matter of

taxing costs and we will not ordinarily interfere therewith. *Wymer v. Dagnillo*, 162 N.W.2d 514, 519 (Iowa 1968).

■ In this case, however, we are convinced the district court abused its discretion. This case did not involve a plethora of issues, some of which Jayme won and some of which he lost. This case involved one issue—the custody of Justin—and Jayme was the successful party. We conclude Myrna shall be taxed the court costs.

We also conclude the district court should not have ordered Jayme to pay $1,000 of Myrna's attorney's fees. The authority of the district court derived from Iowa Code chapter 598A. Attorney's fees are only provided for in chapter 598A as punishment for wrongful behavior. *See* Iowa Code § 598A.7(7) (when petition is filed in a clearly inappropriate forum); Iowa Code § 598A.8(3) (when petition is dismissed for wrongful conduct of a party); Iowa Code § 598A.15 (when court must enforce a custody decree of another state which was being violated). None of these provisions are applicable here. Thus, the district court should not have ordered Jayme to pay $1,000 of Myrna's attorney's fees. *Cf. In re Marriage of Havener*, 240 N.W.2d 670, 671 (Iowa 1976) (where no statutory authority existed for allowance of attorney's fees in a modification case, it could not be allowed by the court).

We affirm in part, reverse in part, and tax all court costs against the respondent.

AFFIRMED IN PART AND REVERSED IN PART.