**In re the MARRIAGE OF Diana Kathryn FENNELL and David Nathaniel Fennell**

**Upon the Petition of**

**Diana Kathryn Fennell, Petitioner–Appellant,**

**And Concerning David Nathaniel Fennell, Respondent–Appellee.**

**No. 91–1369.**

Court of Appeals of Iowa.

March 24, 1992.

Mary K. Hoefer of the Mears Law Office, Iowa City, for petitioner-appellant.

Philip A. Leff of Leff, Haupert & Traw, Iowa City, for respondent-appellee.

Heard by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

The issue in this appeal from a dissolution decree is what parent should be granted physical care of the parties' three children born in 1980, 1983, and 1989.

Petitioner-appellant Diana Kathryn Fennell and respondent-appellee David Nathaniel Fennell were married in 1977. David was a high school graduate. Diana was a graduate veterinarian. Prior to 1984 David

worked outside the home and Diana was the primary caretaker of the children. In 1984 the family made a joint decision that Diana would become the breadwinner and David would assume the responsibility for the children. Diana had better employment opportunities than David. Diana and David assumed their agreed responsibilities. The division of duties worked well. David assumed the child care responsibilities of a stay-at-home parent. The children have been very well cared for. Diana supplied an adequate living and assumed family responsibilities in her nonworking hours. David had minimal outside employment during this period. The children are well adjusted and have thrived under the arrangement.

When the dissolution decree was filed, each party sought to be physical custodian. The trial court made David the physical custodian and Diana challenges this finding. Both parents are caring and conscientious. Either would be a strong custodial parent.

The sole question is whether, in weighing all factors on a de novo review, we agree with the trial court's decision to place physical care with David. *See In re Marriage of Muell*, 408 N.W.2d 774, 776 (Iowa App. 1987). The question is, which parent can more effectively care for the children? *See In re Marriage of Estlund*, 344 N.W.2d 276, 280 (Iowa App.1983); *In re Marriage of Sparks*, 323 N.W.2d 264, 266 (Iowa App. 1982).

Diana's chief complaint is the trial court hinged its decision on the economic consequences of the custody arrangement it established. We do not agree with Diana that this is the only factor the trial court employed. In reviewing this issue, we consider all factors we are directed by statutory and case law to consider. *See* Iowa Code § 598.41; *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974); *Neubauer v. Newcomb*, 423 N.W.2d 26, 27 (Iowa App.1988).

This has been a nontraditional family situation. We are, therefore, careful to approach the issue without sexual stereotypes.

Diana is employed by the federal government as an inspector at the Louis Rich plant in West Liberty, Iowa, where she lives. She is an excellent employee. Her employment is stable and secure. Her work hours are from 5:30 a.m. to 2:00 p.m. She is not required to travel away from home. With her full-time, outside employment, Diana has continued to assume responsibilities for the family during her nonworking hours. David, as an at-home parent, has relieved her of the numerous child raising problems that occurred during her working hours.

In December 1990 Diana left the family residence. She agreed that David assume primary care of the children during the parties' separation. Diana exercised substantial visitation. When Diana found a home, less than a month before trial, the agreement was changed and Diana and David alternated custody every two weeks. After leaving the family home, Diana established a relationship with a man who ultimately entered her home against her will and sexually assaulted her. She has terminated this relationship.

Diana is competent and energetic. She is very bright. David by contrast is gentle and likable, but his intellectual abilities are not those of Diana.

Diana contends she is the better parent. She points to her employment history and the fact she has had excellent stable jobs, while David has not been able to successfully maintain employment of the nature sufficient to meet the family's financial needs.

She also points to her superior intellectual abilities, which she claims make her better able to challenge the children's intellectual needs. She also argues her neighborhood, in a West Branch Mobile Home Park, is superior to David's, in a home in Cedar Valley, where there are several abandoned homes, and the children have to ride a bus to go to school.

■ David, on the other hand, argues he has been the primary caretaker of the children. David has done an excellent job in that capacity for the past seven years.

David advances he has committed a substantial portion of his life to taking care of his children, and the children are well-adjusted and emotionally and physically healthy. The fact a parent was the primary caretaker prior to separation does not assure he or she will be the custodial parent. *See In re Marriage of Toedter*, 473 N.W.2d 233, 234 (Iowa App.1991) (physical care with the father was affirmed despite the mother's role as primary caretaker); *Neubauer*, 423 N.W.2d at 26–27 (custody of the children who had been in the mother's primary care for most of their lives was awarded to the father). However, consideration is given in any custody dispute to allowing the children to remain with a parent who has been a primary caretaker so as to enable the children to have continuity in their lives. *In re Marriage of Moorhead*, 224 N.W.2d 242, 244 (Iowa 1974); *In re Marriage of Green*, 417 N.W.2d 252, 253 (Iowa App.1987).

 We recognize Diana's superior intelligence. But, we find David has been able to supply the children with intellectual stimulation. He has taken the children to the public library, purchased a home computer with programs for educational improvement, helped the children with a number of pets, and worked in school and scout activities.

We recognize the custody issue is extremely close. We look to the trial court's decision. *See Muell*, 408 N.W.2d at 776. We do not find any valid reason to disturb the decision of the trial court.

AFFIRMED.