In re the MARRIAGE OF Veronica Jean BURKLE and Randy Leo Burkle.

Upon the Petition of Veronica Jean Burkle, Petitioner–Appellant,

And Concerning Randy Leo Burkle, Respondent–Appellee.

No. 93–1930.

Court of Appeals of Iowa.

Oct. 25, 1994.

**440**

Mary M. Schumacher of Roth & Schumacher, Dubuque, for appellant.

Robert L. Sudmeier of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellee.

Heard by SACKETT, P.J., and HABHAB and CADY, JJ.

CADY, Judge.

This is an appeal from a decree by the trial court dissolving the marriage between Veronica and Randy Burkle. Veronica primarily challenges the provision in the decree which designated Randy as the primary caretaker of the children. She also disputes the property division. On our de novo review, we affirm.

Veronica and Randy were married in 1981. They have three children, Troy, born October 17, 1982; Brad, born January 13, 1984; and Becki, born July 11, 1986. The family lived in Dyersville, Iowa, and later moved to Earlville.

Veronica worked throughout the marriage for various publishing companies. For several years following Troy's birth, Veronica performed part-time freelance work while remaining at home. In 1988, she began working outside the home on a full-time basis. She is currently employed by a publishing company and has a gross annual income of $16,640. Randy works as a farm laborer, as he did for most of the marriage. His net monthly earnings are $1,259. Veronica and Randy are high school graduates.

Veronica was the primary caretaker of the children during the marriage. Randy often worked long hours. They both had family members in the area who helped care for the children after Veronica began working outside the home. Veronica's sister lived very close to Veronica and Randy.

Veronica and Randy separated on July 1, 1993, when Veronica and the children moved from the family residence to a mobile home in Earlville. Veronica had filed a petition for dissolution of marriage one month earlier.

■ Randy filed an application for temporary custody of the children prior to the separation. A hearing on affidavits was set for July 13, 1993. On July 2, Veronica filed a domestic abuse petition. The petition was dismissed for insufficient evidence following a hearing on July 6. Veronica subsequently testified at trial she filed the petition, on the advice of her former lawyer, in an effort to gain an advantage in the custody dispute.[1]

---

1. Veronica's appellate counsel did not represent Veronica at this time and was not implicated in Veronica's unsubstantiated claim against her former lawyer. We observe that the use of a domestic abuse proceeding solely to gain an advantage over an opposing party in a dissolution

Randy was granted temporary custody of the children. Veronica was also required to pay child support. Veronica subsequently filed an application to allow her to return to the family home to reside with Randy and the children during the pendency of the dissolution action. The trial court denied the application and directed the parties to remain separated pending the trial.[2] The case went to trial on November 17, 1993.

Randy acknowledged Veronica was the primary caretaker of the children during the marriage, but he also observed she began to stay out late at night during the last year of the marriage and would not always go directly home from work. On occasions, the children were left unattended. Veronica developed a close relationship with a male friend prior to the separation, which has continued. The children enjoy Veronica's male friend. Veronica had a prior extramarital affair during the marriage. Veronica plans to move from Earlville to the Dubuque area following the divorce.

Randy has been alert to the needs of the children since the separation and has become reinvolved with a local church. Veronica has maintained regular visitation of the children, but is delinquent in her child support payments.

The trial court awarded the parties' home to Randy and divided their debts between them. In awarding joint custody with Randy as the primary caretaker, the court noted Randy's active interest in the needs of the children during the separation and the benefit to the children in being exposed to the extended family members in the Earlville area. The court also felt Randy would provide a better role model for the children.

Veronica believes she should have been designated the primary caretaker since she was the principal caregiver during the marriage. She also claims the trial court placed too much emphasis on her extramarital af-

fairs. Veronica's challenge to the property award is based on her belief that neither party will be able to pay off their debts. She argues that the house should have been sold and the proceeds used to retire debt.

## I. Standard of Review.

■ Our review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7). Prior cases have limited precedential value, and we base our decision primarily on the particular circumstances of the parties before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

## II. Primary Care.

■ In child custody cases, our first and governing consideration is the best interests of the child. The factors courts consider in awarding custody are found in our statutes, as well as prior cases. *See* Iowa Code § 598.41(3); *In re Marriage of Weidner*, 338 N.W.2d at 355–56; *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). These factors essentially bear on what will be in the long-term best interests of the child. *In re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984). The critical issue is which parent will do better in raising the child. *In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App.1985). Gender is irrelevant in the determination. *Id.* Neither party should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *Id.*

■ The parent who has been the primary caretaker of the children during the marriage will not necessarily be designated by the court to be primary caretaker at the time of the divorce. *In re Marriage of Fennell*, 485 N.W.2d 863, 865 (Iowa App.1992). The

custody dispute may constitute tortious conduct, and violate Iowa R.Civ.P. 80(a). The involvement of a lawyer in such activity may also violate the rules of professional responsibility. *See, e.g.*, DR 7–102, DR 1–102.

**2.** Iowa Code section 561.15 (1993) provides neither spouse can remove the other spouse from

the family home without consent. Iowa Code section 598.33 (1993) permits the court to order a party to vacate the family home during the pendency of a divorce action only upon a showing that the other party or the children are in imminent danger of physical harm.

role of primary caretaker is, however, critical in the development of children, and careful consideration is given in custody disputes to allowing the children to remain with the parent who has been the primary caregiver. *Id.* Allowing a parent to continue as the primary caretaker after the divorce also adds needed continuity to the lives of children at what can be a difficult and confusing time for them. *Id.*

In this case, we recognize Veronica's long-time role as primary caretaker of the three children. This role was comprehensive and included such activities as preparing and planning meals, purchasing and cleaning clothing, providing and arranging medical care, disciplining, educating, teaching, arranging for baby-sitters, attending school activities, providing transportation, arranging and encouraging social interaction, and spending time together.

We also recognize that the primary reason Randy was less involved in the daily lives of the children was because he worked long hours to help meet the financial needs of the family. After Randy gained custody following the separation, he changed his work schedule to spend more time with the children. He has also been alert and sensitive to their needs. He was regarded as a good parent by Veronica and others throughout the marriage.

We do not place emphasis on Veronica's extramarital affairs. There was no evidence the children were exposed to her activities. *See In re Marriage of Grandinetti,* 342 N.W.2d 876, 879–80 (Iowa App.1983). Nevertheless, "moral misconduct" is a factor to consider in custody determinations. *In re Marriage of Hornung,* 480 N.W.2d 91, 93 (Iowa App.1991). Another appropriate factor to consider is whether the environment offered by a custodial parent will include extended family members. *See In re Golay,* 495 N.W.2d 123, 125 (Iowa App.1992).

Considering all the evidence, we agree with the trial court that the children's best interests will be served by awarding primary care to Randy. We recognize the decision is very close in light of Veronica's long-time role as the primary caretaker. Yet, in these close cases we give weight to the trial court's findings. *See In re Marriage of McDowell,* 244 N.W.2d 238, 239 (Iowa 1976). Moreover, Randy has demonstrated he can provide the children with a stable environment and is sensitive to their needs. He is also able to adjust his work schedule to accommodate his expanded role as caretaker. We also agree with the trial court that Randy's character appears more suitable for the role of the primary custodian.

### III. *Property Division.*

Partners in a marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Hoffman,* 493 N.W.2d 84, 87 (Iowa App.1992). The allocation of marital debts inheres in the property division. *In re Marriage of Johnson,* 299 N.W.2d 466, 467 (Iowa 1980). Like the division of the assets, the division of the marital debts must be fair and equitable under the circumstances.

Among the factors to consider in dividing the property of the marriage is the desirability of awarding the family home to the party having physical care of the children. Iowa Code § 598.21(1)(g) (1993). Under the circumstances, we agree the homestead was properly awarded to Randy. Although the debt load could be reduced if the home was sold, the children will benefit by remaining in familiar surroundings.

In conclusion, we affirm the decision of the trial court. Costs are assessed to Veronica.

**AFFIRMED.**