Dana D. Payne appeals challenging certain provisions of the decree dissolving her marriage to Jerry A. Payne. She contends that she, not Jerry, should have been awarded primary physical care of the only child of the marriage, a son, born in March of 1999. She further contends the district court should have awarded her attorney fees and that she should have appellate attorney fees. We affirm.
SCOPE OF REVIEW.
We review de novo. Iowa R. App. P. 6.4; In re Marriage ofFestal, 467 N.W.2d 261, 263 (Iowa 1991). We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. In re Marriage of Hickey,640 N.W.2d 846, 847 (Iowa Ct.App. 2001) (citing In reMarriage of Steenhoek, 305 N.W.2d 448, 452 (Iowa 1981)). We give weight to the fact-findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.14(6)(g).
BACKGROUND.
The parties were married in October of 1997. Dana had a child born in October of 1994 from a prior relationship who was in her custody. Jerry had two children, a daughter born in March of 1991, and a son born in August of 1993, from a prior marriage that ended in divorce. The children's mother was dead and the children were in Jerry's care. These children and the child at issue lived with the couple until they separated in November 2005. Dana took the child at issue and her older son and left after learning that Jerry was having an affair and his girlfriend was pregnant. Jerry's two older children stayed with him.
Dana filed a petition seeking dissolution of the marriage in May of 2006. Following a hearing on temporary custody and other matters, the district court considered affidavits filed by each party, and provided during the pendency of the action that the parties should have joint legal custody and Dana should have primary physical care. Jerry was given "liberal and reasonable rights of visitation." The court then set out what it determined to be his visitation "at a minimum." The district court's final decree noted that despite the fact that the temporary visitation granted was to be the minimum, Dana was not cooperative in allowing Jerry to expand it.
When the matter came on for trial in May of 2007, the parties agreed that they should be awarded joint legal custody of their son. Jerry sought shared physical care or primary physical care if shared physical care was not ordered. Dana sought primary physical care. After hearing the evidence the district court, on September 14, 2007, filed a decree rejecting Jerry's claim for shared physical care reasoning that there is a high potential for conflict between the parents if shared care were awarded.
The court then found Jerry would be the better physical custodian and awarded him primary physical care. The court allocated certain assets and debts. Dana was ordered to pay child support of $53.88 a week. Jerry was ordered to pay Dana $200 a month in alimony. The court made no award of attorney fees to Dana despite her request for same, finding that Jerry was assuming the majority of the parties' debt.
PRIMARY PHYSICAL CARE.
Dana contends she, not Jerry, should have been awarded primary physical care of their child. There is no inference favoring one parent as opposed to the other in deciding which one should have custody. See In re Marriage of Bowen, 219 N.W.2d 683,688 (Iowa 1974). We determine each case on its own facts to decide which parent can administer more effectively to the long-range interest of the child. In re Marriage ofWinter, 223 N.W.2d 165, 166 (Iowa 1974). The critical issue is determining which parent will do a better job raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in an original custody proceeding. See Marriage ofDecker, 666 N.W.2d 175, 177 (Iowa Ct.App. 2003); Inre Marriage of Ullerich, 367 N.W.2d 297, 299 (Iowa Ct.App. 1985).
Dana argues she should have primary care because she was the primary care parent prior to the parties' separation. We recognize, as the district court found, that Dana was the primary care giver of all the children during the first two years of the parties' marriage when she was not employed outside the home. In subsequent years when she was employed outside the home, both parents shared responsibilities for the children on a more equal basis.
Even if we were to assume that Dana was the primary care giver of the child in question during his life to date, the fact a parent was the primary caretaker prior to separation does not assure he or she will be the custodial parent. Decker,666 N.W.2d at 178; In re Marriage of Kunkel,546 N.W.2d 634, 635 (Iowa Ct.App. 1996); see also In re Marriage ofToedter, 473 N.W.2d 233, 234 (Iowa Ct.App. 1991) (affirming physical care with father despite mother's role as primary caretaker); Neubauer v. Newcomb, 423 N.W.2d 26, 27-28
(Iowa Ct.App. 1988) (awarding custody of a child who had been in mother's primary care for most of life to father).
The question is always which parent will do the better job of raising the child. In re Marriage of Crotty,584 N.W.2d 714, 717 (Iowa Ct.App. 1998); In re Marriage ofRodgers, 470 N.W.2d 43, 44 (Iowa Ct.App. 1991). We look to the factors set forth in In re Marriage of Winter,223 N.W.2d 165, 166-67 (Iowa 1974). We give weight to the fact-findings of the trial court, especially when considering the credibility of witnesses. Iowa R. App. P. 6.14(6)(g). Yet, we are not bound by these determinations. Id. We base our decision primarily on the particular circumstances of the parties before us. In reMarriage of Weidner, 338 N.W.2d 351, 356 (Iowa 1983). The interests of this child are the primary consideration.Crotty, 584 N.W.2d at 717. We give consideration to each parent's role in child-raising prior to a separation in fixing primary physical care. See In re Marriage ofLove, 511 N.W.2d 648, 650 (Iowa Ct.App. 1993); In reMarriage of Fennell, 485 N.W.2d 863, 865 (Iowa Ct.App. 1992). Though we do not award custody based on hours of service for past care, we attempt to determine which parent will in the future provide an environment where the child is most likely to thrive. In re Marriage of Engler, 503 N.W.2d 623, 625
(Iowa Ct.App. 1993).
The parties separated because Jerry had an affair that resulted in a pregnancy. He testified that the marriage was over before that time and that the pregnancy was the result of the first intercourse he had outside the marriage. At the time of trial this child and her mother were living in his home. She was employed and was making financial contributions to the household. Less than a year after the parties' separation Dana established a relationship with a man who spent several nights a week in her home. We know little else about either party's friend.
Either party is an adequate parent. The question we need to decide is who is better.
The district court expressed considerable concern about Dana's issues with anger management and gave this problem significant weight in arriving at its decision. The record reflects that Dana has a violent temper. Both she and Jerry testified about her rage directed both at him and at the children. She admitted throwing things at Jerry and the children and breaking things.
Obviously Dana had reasons for her anger and frustration. When she married she took on some responsibility for Jerry's two motherless young children in addition to her child. Clearly she had frustrating moments. She learned of her husband's affair when the woman he was seeing was seven months pregnant with his child, a situation that would certainly bring anger. And she correctly argues that this action on Jerry's part does little to enhance his chance for custody. Yet it appears even by her own admissions that her anger can reach an extremely high level. Her extreme anger has also been directed at incidents not nearly as serious as her husband's affair. For instance, she has shown extreme anger in dealing with minor discipline issues with the children, including erupting at the fact her step-children were spending part of Christmas Day with their maternal grandparents, the failure of her step-daughter to give her the greeting she expected, and the fact that one of her child's teachers was seeking help from her with her child's educational deficiencies.
We commend Dana for taking anger management classes. Yet the district court found the problem has not been completely abated in that outbursts have taken place in the presence of her children and step-children and it is likely Dana cannot control her outbursts. The court was concerned that Dana will engage in conduct that will be detrimental to her child.
The district court found the parties' child to be one who enjoys good physical, mental, and emotional health, and who gets along with his parents and his half-siblings. The child is faced with loss of the association with three half-siblings if in his mother's home and one half-sibling if in his father's home.
The district court also found that Jerry appears more stable and is better able to provide security for his child, and is better equipped to reduce the conflict between the parties.
The district court, in an extensive and well-reasoned decision, has made further findings that we need not reiterate. Our review of it and the evidence causes us to find no reason to reverse the decision. We affirm on this issue.
TRIAL ATTORNEY FEES.
Dana contends she should have had an award of attorney fees for her trial attorney.
Iowa trial courts have considerable discretion in awarding attorney fees. In re Marriage of Giles, 338 N.W.2d 544,546 (Iowa Ct.App. 1983). To overturn an award the complaining party must show that the trial court abused its discretion.Id. Awards of attorney fees must be for fair and reasonable amounts, In re Marriage of Willcoxson,250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. In re Marriage of Lattig,318 N.W.2d 811, 817 (Iowa Ct.App. 1982). The district court did not abuse its discretion. In denying such an award, it considered the fact that Jerry assumed substantial debt and reasoned that the assumption of the debt should relieve him from further attorney fee obligations. The district court did not abuse its discretion here. We affirm on this issue.
APPELLATE ATTORNEY FEES.
Both parties request appellate attorney fees. An award of attorney fees is not a matter of right, but rests within the court's discretion. In re Marriage of Gilliam,525 N.W.2d 436, 439 (Iowa Ct.App. 1994) (abrogated on other grounds by In re Marriage of Fox, 559 N.W.2d 26 (Iowa 1997)). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. In re Marriage of Roberts,545 N.W.2d 340, 345 (Iowa Ct.App. 1996). Dana has been unsuccessful on both issues on appeal. We deny her request. Jerry has been successful in this appeal. However, his income is about twice that of Dana. We therefore award no attorney fees. Costs on appeal are taxed to Dana.
AFFIRMED.