**IN THE COURT OF APPEALS OF IOWA**

No. 13-1794
Filed July 30, 2014

**Upon the Petition of**
**KAREN BETH SQUIRES,**
    Petitioner-Appellee,

**And Concerning**
**MARK JOHN ORTON,**
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Rustin T. Davenport, Judge.

A father appeals from a district court judgment granting physical care of his minor child to the mother. **AFFIRMED.**

Teresa A. Staudt of Esser & Isaacson, Mason City, for appellant.

J. Mathew Anderson of Heiny, McManigal, Duffy, Stambaugh & Anderson, P.L.C., Mason City, for appellee.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**MULLINS, J.**

Mark Orton appeals the district court's award of physical care of his minor child to the mother, Karen Squires. Orton contends the district court improperly decided not to award him physical care and the right to claim the child as a tax exemption. He also seeks appellate attorney fees.

## I. BACKGROUND FACTS AND PROCEEDINGS

Orton and Squires are the parents of a daughter, born in November 2010. Never married to one another, they had been dating for one year prior to the child's birth. They were both raised in northern Iowa and have extended families in the area. Just before their daughter was born, Orton and Squires began to live together in Squires's Clear Lake home, where Orton paid rent to her. This arrangement lasted until February 2012 when Orton moved out. Shortly after, Squires petitioned for physical care of their child, to which Orton responded with an application for shared physical care. In July 2012, during pendency of the proceeding, Squires moved to Norwalk with the child after she accepted new employment. Squires provided no notice to Orton of her plan to move, and he only learned of her intentions after a neighbor of Squires spotted a moving truck outside her home. The next month, at a hearing establishing temporary custody of the child, the court found both parties to be "suitable parents and caregivers" and granted them shared physical care. The court remarked however that it "looks harshly on how [Squires] handled her move to Norwalk vis-à-vis [Orton]" and the incident "bodes ill for future parental cooperation."

At trial in August 2013, the district court extended the temporary order for joint physical care for one year until the child began preschool, after which, the court held physical care would pass to Squires. The court determined that although shared physical care between Squires and Orton had been "somewhat successful," such an arrangement would not be in the best interests of the child once she gets older and begins attending school, due to the distance between the parties (over 125 miles) and their child's need for a single location for educational purposes. The court found both parties to be fit care providers. However, it expressed concern over Orton's financial ability to provide for the child, his lack of "goal-oriented conduct," and testimony that he had a history of neglecting his diabetes. In contrast, the court noted the high level of care Squires provided for the child in the past, her lack of criminal history, and her positive financial situation. The court concluded Squires was "the more stable and reliable parent" and placed physical care with her. It further granted Squires the right to claim the child as a tax exemption, on the basis that her income was greater than Orton's and she would thus benefit most from the exemption. Orton filed a timely notice of appeal challenging the court's ruling on both physical care and the tax exemption. Orton also requests appellate attorney fees.

## II. SCOPE AND STANDARDS OF REVIEW

Our review in equity cases is de novo. Iowa R. App. P. 6.907; *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We give weight to the findings of the district court, especially concerning the credibility of witnesses. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Hansen*, 733 N.W.2d 683, 690

(Iowa 2007). Prior cases have little precedential value; instead, we must base our decision primarily on the particular circumstances of the case before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983); *see also Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002).

## III. PHYSICAL CARE

The fundamental concern in a physical care determination is placing the child with the parent who will best minister to the long-range best interests of the child. *In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974). "Physical care issues are not to be resolved based upon perceived fairness to the *spouses*, but primarily what is best for the *child*." *Hansen*, 733 N.W.2d at 695. The court's objective is to place the child in "the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* Our supreme court has established a list of factors to serve as guiding principles in custody determinations. *See Winter*, 223 N.W.2d at 166 (including the characteristics and needs of each child, the characteristics of each parent, the capacity and interest of each parent to provide for the needs of the child, the relationship between the child and each parent, the effect on the child of continuing or disrupting an existing custodial status, the nature of each proposed environment, and any other relevant matter the evidence in a particular case may disclose). Iowa Code section 598.41(3) (2011) also provides factors to consider when determining the best interests of the child. Ultimately however the court must consider "the total setting presented by each unique case." *Hansen*, 733 N.W.2d at 699.

At trial, the district court remarked its decision was a difficult one and that either parent could provide physical care for their child. Both parents have been active in her upbringing and have taken proactive steps to provide for her needs. Ultimately, the court found it was in the best interests of the child to award physical care to Squires. On appeal, Orton claims he should be granted physical care instead of Squires. He contests the court's finding that Squires played a greater role in raising the child, as well as the court's concerns regarding his health and finances. Orton claims Squires's arguments at trial "were heavily weighed on the past, prior to [the child]'s birth" and points to positive life changes he has made since the birth of his daughter. Furthermore, Orton argues he should be awarded physical care due to the presence of extended family near his home in northern Iowa.

The capacity of a parent to provide for a child's material needs is a factor in determining custody. *See Winter*, 223 N.W.2d at 166. "However, the relative financial status of the parties is not a controlling factor . . . providing they are otherwise equipped therefor and the child's welfare would not be jeopardized." *In re Marriage of Jennerjohn*, 203 N.W.2d 237, 243 (Iowa 1972); *accord Hagen v. Hagen*, 226 N.W.2d 13, 16 (Iowa 1975); *In re Marriage of Gravatt*, 371 N.W.2d 836, 840 (Iowa Ct. App. 1985). Since summer 2012 Squires has been employed at Norwalk Family Physicians, where her projected annual income is $38,546.56. Orton works as a hunting guide, seasonal construction worker, and owns a landscaping business. He projects his income for 2013 to be $20,997. In the past, Orton's annual income was $12,068 in 2012 and $3498 in 2011.

The district court remarked that Orton's self-reported financial situation "does not make sense." In a financial affidavit provided to the court, Orton reported his annual living expenses as more than double the amount of his income in 2012. At trial, he was unable to explain how he was able to meet these expenses on his income, yet insisted he made enough to support both himself and his child. Based upon this evidence and testimony, the district court determined Orton was "either not credible regarding his income or is not credible in his assertion that he would not have any financial difficulty in taking care of his daughter." Orton has not explained on appeal this discrepancy in his finances.

The district court also expressed concern over Orton's criminal and drinking history. Orton's criminal record includes the following convictions: two for operating while intoxicated, three for public intoxication, two for interference with official acts, two for assault, and one for an open container. According to his testimony, the interference and assault charges arose out of occasions when he was at drinking establishments. His behavior caused him to be banned from one bar. On appeal, Orton acknowledges his criminal record and history of drinking but contends he has "made significant changes in his life" since the birth of his daughter, does not allow alcohol to be consumed in his home while the child is in his care, and hopes to use his past as "tools" in raising his daughter. His family testified they do not see him drink anymore. However, at trial the district court heard testimony that Orton was "falling down drunk" in February 2013. On appeal, Orton recognizes "he had too much to drink one night in February" but

points out that the child was not in his care at the time, and his current girlfriend will not tolerate such behavior.

The district court also considered Orton's diabetes and his record of treatment. A parent's physical health is a factor to be considered in determinations of custody. *See Winter*, 223 N.W.2d at 166. At trial, Squires contended Orton does not properly care for his diabetic condition or seek regular medical treatment. Two physicians testified about the dangers of alcohol consumption by diabetics and the need for constant treatment. Various witnesses also testified to the level of care and attention they had seen Orton give his condition. The district court concluded that "[Orton's] failure to be proactive concerning his own medical situation reflects poorly on his ability to think long-term for his own good and his family's situation." On appeal, Orton contends the evidence does not support the court's finding. He argues that from a young age he learned from his mother how to self-treat his condition. He also alleges the physicians who testified at trial were not diabetes specialists and did not have access to his medical records. Furthermore, Orton argues their testimony concerning diabetes was "inflammatory, sensationalized, and a mischaracterization of [his] experience with diabetes." Orton acknowledges there was a three-year period when he did not have medical insurance, from 2010 until 2013, but contends he visited the local free clinic, received free insulin through a friend of Squires, now has health insurance, and is again seeking routine medical treatment.

The district court also found Squires played a greater role in raising the child while she and Orton were living together in Clear Lake. Although physical care experience is a factor considered by the court, it does not in itself guarantee an award of physical care. *See Hansen*, 733 N.W.2d at 697 (approximation factor); *see also In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996). "The role of primary caretaker is . . . critical in the development of children, and careful consideration is given in custody disputes to allowing children to remain with the parent who has been the primary caregiver." *In re Marriage of Wilson*, 532 N.W.2d 493, 495 (Iowa Ct. App. 1995). Orton claims the district court's finding was incorrect and points to evidence of his involvement in raising his daughter since her birth. He also argues Squires denied him the opportunity to provide more care, as shown by her demand for physical care in her petition to the court.

Finally, Orton argues he should be granted physical care because living in Norwalk diminishes the support and stability provided by extended family, both Orton's and Squires's family, in northern Iowa. He alleges by her sudden and unannounced move to Norwalk Squires attempted to alienate the child from him. Orton points to an exchange he had with Squires's father on the day she moved away as evidence of her desire to deny him access to the child. Orton also expresses concern that Squires will move further away in the future.

Our statutes provide that insofar as is reasonable and in the best interest of the child, the court should order an award of custody which will assure the child the opportunity for the maximum continuing physical and emotional contact

with both parents. Iowa Code § 598.41(1)(a). The court should therefore consider whether each parent can support the other parent's relationship with the child. *See In re Marriage of Leyda*, 355 N.W.2d 862, 866 (Iowa 1984). In addition, the court may consider the presence of extended family members in the environment offered by a parent. *See In re Marriage of Burkle*, 525 N.W.2d 439, 442 (Iowa Ct. App. 1994).

We recognize the strong support system of extended family in northern Iowa is a factor that favors Orton. The record reflects that Orton's family has had extensive contact with the child and assists with her upbringing. This is especially true in the case of Orton's father, who has regularly provided day care and has developed a close relationship with his grandchild.

While it is disappointing that Squires obtained new employment and moved to Norwalk without consulting Orton, there is little in the record to support Orton's claim the purpose of the move was to alienate the child from him. Squires has allowed access and frequent contact since the move. Her new position provided her a significant increase in pay. The distance from Orton's home to Norwalk is less than 150 miles, and Squires has returned to northern Iowa almost every weekend with the child to visit her family. This evidence of Squires's own close relationship with her family and regular returns to the area weigh against Orton's concerns that she intends to move further away. Furthermore, Squires has done nothing to impede or interfere with Orton's custodial rights following the court's temporary order of joint physical care in

August 2012. On this record we find no evidence suggesting that Squires will not support Orton's custodial relationship if she is granted physical care.

The district court found that although Orton has been involved in raising the child, Squires played a more predominant role in daily care. She primarily scheduled and attended the medical appointments, and witness testimony shows she primarily handled various domestic responsibilities, including bathing, changing diapers, and providing meals. While there is evidence Orton occasionally performed these duties as well, it does not detract from the evidence that Squires performed them on a more constant basis. We are not convinced by the record that Squires denied Orton the opportunity to be more active in providing care. In addition, we note Orton would leave the state to work as a hunting guide approximately two months annually during the first two years after the child's birth, leaving Squires to care for their daughter. Based on this record, we agree with the district court's finding that Squires provided most of the day-to-day parenting of the child while the parties lived together.

We recognize the difficulties Orton must have had gaining sufficient medical care without health insurance and that the witness testimony concerning Orton's self-treatment is conflicting. However, the dangers of alcohol consumption by diabetics is well known. We find Orton's record of excessive drinking as recently as February 2013 to demonstrate either a lack of awareness or a lack of responsibility regarding his diabetic condition, with potential consequences for the daily care of the child.

We recognize and commend the positive changes Orton has made since the birth of his daughter and that he has demonstrated himself capable of providing care for her. While his employment circumstances appear to continue to improve, his future remains uncertain, and we share the district court's concerns about his credibility in explaining those circumstances. Further, we cannot ignore his criminal record, which is tied so closely to abuse of alcohol. We are concerned not only with his history of drinking but with his minimization of that history. While his behavior has dramatically improved since the November 2010 birth of his child, that was less than three years before the trial in this matter. If his alcohol abuse had been only occasional or sporadic, we might be willing to pay less attention to it. But Orton has ten convictions that involve or arose out of drinking incidents, resulting in him being a danger on the road, in public, and in drinking establishments. That history demonstrates a lack of good judgment, even if he no longer regularly abuses alcohol.

By contrast, we note Squires's lack of a criminal record, her stable employment, and her past history as the primary caretaker of their child. Although the strong support system of extended family in northern Iowa is an important factor, this single factor does not tip the scales away from awarding physical care to Squires. Upon our de novo review of the record, we affirm the district court's determination that the child's interests are best effectuated by awarding physical care to Squires.

## IV. TAX EXEMPTION

Generally the parent awarded physical care of the child is entitled to claim the child as a tax exemption. *In re Marriage of Okland*, 699 N.W.2d 260, 269 (Iowa 2005); *see also* Iowa Ct. R. 9.6(5). Courts, however, can award tax exemptions to the noncustodial parent "'to achieve an equitable resolution of the economic issues presented.'" *Okland*, 699 N.W.2d at 269 (quoting *In re Marriage of Rolek*, 555 N.W.2d 675, 679 (Iowa 1996)). Factors for the court to consider in such a determination include whether more money would be made available for the child's care and whether the custodial parent would benefit least from the exemption. *Id.* The district court awarded Squires the tax exemption on the basis that her income is greater than Orton's and that she will benefit most from the exemption. Orton argues it should instead be alternated between them annually. He contends his 2012 gross income was larger than Squires's 2012 income, and therefore, they would both benefit from the exemption. However, Orton points to the amount he makes before factoring in his business expenses. Because Orton's net income after subtracting business expenses in 2012 was a fraction of Squires's income, we see no reason to modify the district court's order granting the tax exemption solely to Squires.

## V. APPELLATE ATTORNEY FEES

Finally, Orton seeks an award of appellate attorney fees.

Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

*Id.* at 270 (quoting *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993)). Most of Orton's arguments were not meritorious, and he did not prevail on appeal. Therefore, we decline to award him attorney fees. *See id.* (awarding no attorney's fees where the opposing party primarily prevails).

**AFFIRMED.**