# IN THE COURT OF APPEALS OF IOWA

No. 19-1392

IN RE THE MARRIAGE OF CHELSIE MARTINEZ
AND JOSE MARTINEZ JR.

Upon the Petition of
CHELSIE MARTINEZ,
      Petitioner-Appellee,

And Concerning
JOSE MARTINEZ JR.,
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Jasper County, Richard B. Clogg, Judge.

A father appeals from a dissolution decree awarding him liberal visitation instead of shared physical care and directing him to pay the mother's attorney fees. **AFFIRMED AS MODIFIED.**

Barry S. Kaplan and C. Aron Vaughn of Kaplan & Frese, LLP, Marshalltown, for appellant.

T.J. Hier of Hier Law Office, P.C., Baxter, for appellee.

Considered by Bower, C.J., Schumacher, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCHUMACHER, Judge.**

Appellant-respondent Jose Martinez Jr. appeals from a dissolution decree, which granted him visitation instead of shared physical care and required him to pay the petitioner's attorney fees. We affirm the district court's physical care award and visitation schedule, but we modify the award of attorney fees.

**Background Facts and Proceedings**

Jose Martinez Jr. and Chelsie Martinez were married in October 2014 and are the parents of minor child L.M., age five. Chelsie has two minor children from a prior marriage. After several years, the relationship between Jose and Chelsie deteriorated. A dissolution proceeding was initiated in Marshall County, where the parties appeared before the district court for a hearing on temporary matters. The court issued an order regarding temporary matters on January 10, 2018. This case was ultimately dismissed.

After the dismissal of the Marshall County case, Chelsie filed a petition for dissolution of marriage on September 18, 2018, in Jasper County. At the time, she was living in Mingo and Jose was living in Marshalltown. Chelsie moved at least once during the pendency of this action and was living in Newton at the time of trial. The trial took place on May 30, 2019.

The court issued a decree of dissolution on July 25, 2019. The court ordered that Jose pay Chelsie $719 per month in child support, a $3000 property equalization settlement payment, and $7500 in attorney fees. The court awarded the parents joint legal custody. Chelsie was awarded physical care with Jose granted visitation on alternating weekends and holidays. Each parent was awarded two weeks of summer vacation. Jose was awarded the former marital

home, which the court found was gifted to him by his mother. Jose appeals, arguing the district court erred by denying his request for joint physical care and awarding $7500 in attorney fees to Chelsie.

**Standard of Review**

We review dissolution orders de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). "We give weight to the findings of the district court, especially to the extent credibility determinations are involved." *Id.*

We review an award of attorney fees for abuse of discretion. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012). "An abuse of discretion occurs when the district court exercises its discretion on grounds or for reasons that are clearly untenable or to an extent clearly unreasonable." *Id.* (citation and internal quotation marks omitted).

**Discussion**

1. Custody Award

Jose argues the court acted inequitably in denying joint physical care given the historical caregiving by both parties, sufficient communication, and Jose's ability to encourage L.M.'s relationship with her mother and her mother's family.

When determining physical care, we consider the factors enumerated in *In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974),[1] and Iowa Code section

---

[1] The *Winter* court listed twelve factors to consider in determining physical custody:
> 1. The characteristics of each child, including age, maturity, mental and physical health.
> 2. The emotional, social, moral, material, and educational needs of the child.
> 3. The characteristics of each parent, including age, character, stability, mental and physical health.

598.41(3) (2019).[2]  *See Hansen*, 733 N.W.2d at 696.  The controlling interest is the best interests of the child.  *In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996).  We consider "who can minister more effectively to the long range best interest of the child.  The objective should always be to place the child

---

        4. The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child.
        5. The interpersonal relationship between the child and each parent.
        6. The interpersonal relationship between the child and its siblings.
        7. The effect on the child of continuing or disrupting an existing custodial status.
        8. The nature of each proposed environment, including its stability and wholesomeness.
        9. The preference of the child, if the child is of sufficient age and maturity.
        10. The report and recommendation of the attorney for the child or other independent investigator.
        11. Available alternatives.
        12. Any other relevant matter the evidence in a particular case may disclose.
223 N.W.2d at 166–67.
[2] The relevant factors we consider pursuant to section 598.41(3) are as follows:
        a. Whether each parent would be a suitable custodian for the child.
        b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
        c. Whether the parents can communicate with each other regarding the child's needs.
        d. Whether both parents have actively cared for the child before and since the separation.
        e. Whether each parent can support the other parent's relationship with the child.
        f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.
        g. Whether one or both the parents agree or are opposed to joint custody.
        h. The geographic proximity of the parents.

in the environment most likely to bring that child to healthy physical, mental and social maturity." *Id.* "There is no presumption in favor of the mother or the father." *Id.* There is also no presumption in favor of joint physical care. *Hansen*, 733 N.W.2d at 692.

In considering the proper physical care arrangement, we find notable Chelsie's greater involvement in attending L.M.'s medical appointments and managing L.M.'s school activities. Additionally, Chelsie previously served as the primary caretaker. For the majority of the child's life, Chelsie was a stay-at-home mother. We recognize that

> [t]he parent who has been the primary caretaker of the children during the marriage will not necessarily be designated the primary caretaker at the time of a divorce. *In re Marriage of Fennell,* 485 N.W.2d 863, 865 (Iowa [Ct.] App. 1992). The role of primary caretaker is, however, critical in the development of children, and careful consideration is given in custody disputes to allowing children to remain with the parent who has been the primary caregiver. *Id.*

*In re Marriage of Wilson*, 532 N.W.2d 493, 495 (Iowa Ct. App. 1995). "Stability and continuity factors tend to favor a spouse who, prior to divorce, was primarily responsible for physical care." *Hansen*, 733 N.W.2d at 696. L.M.'s two half-siblings reside with Chelsie, and we presume siblings should not be separated. *See In re Marriage of Pundt*, 547 N.W.2d 243, 245 (Iowa Ct. App. 1996).

Jose does not have a valid driver's license. At least in part, his lack of a driver's license resulted in Jose being inconsistent in taking advantage of visitation during the pendency of the case. Chelsie produced a calendar exhibit showing Jose missed several of L.M.'s extracurricular events or visitation opportunities. Beyond his transportation issues, the evidence shows Jose has not demonstrated significant interest in L.M.'s schooling. Chelsie testified that Jose had not been in

contact with L.M.'s school and that she had been the school's primary contact with respect to L.M.

In addition, the distance between Jose's residence and Chelsie's residence was a factor presented to the trial court. Jose testified he would relocate to Mingo if Chelsie returned there following the dissolution trial. However, at the time of trial, the evidence showed that the geographic proximity contributed to Jose missing visitation and L.M.'s extracurricular activities. Additionally, at the time of trial, Jose had not made any solid plans for relocation to be closer to L.M.'s residence. We consider this distance and its effects in determining how to apportion physical care. *See* Iowa Code § 598.41(3)(h).

We find the physical-care provisions of the district court's dissolution decree to be in the best interests of L.M. As Jose acknowledged, Chelsie was L.M.'s primary caregiver prior to the dissolution trial. She demonstrated a greater involvement in L.M.'s medical appointments and school. Jose's transportation issues impaired his ability to take advantage of visitation and be present in L.M.'s life. The liberal visitation schedule adopted by the court ensures L.M. will have ample opportunity for continued physical and emotional contact with Jose. *See id.* § 598.41(1)(a). By awarding physical care to Chelsie, L.M.'s primary caregiver prior to trial, the court's decree further ensures stability and continuity. *See id.* We agree with the court's decision denying Jose's request for shared physical care.

2. Attorney Fees

Jose argues the district court abused its discretion by ordering that he pay $7500 for Chelsie's attorney fees when Chelsie testified her attorney fees were approximately $3000. We agree.

"The district court is considered an expert in what constitutes a reasonable attorney fee, and we afford it wide discretion in making its decision." *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 733 (Iowa 2005); *see also In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994) ("Trial courts have considerable discretion in awarding attorney fees."). However, this broad discretion is not limitless. "The test is whether the fee is reasonable and based on the parties' respective abilities to pay." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). Here, we find the court's order directing Jose pay $7500 to Chelsie for attorney fees to be an abuse of discretion.

Chelsie testified regarding her attorney fees at trial, saying, "I think I have $3,000 in this case so far. I don't remember the number off the top of my head." The record contains no other reference to Chelsie's attorney fees and her counsel did not submit an affidavit of attorney fees.

In the dissolution decree, the court said the following in ordering that Jose pay Chelsie's attorney fees:

> The District Court for Marshall County previously ordered Jose to pay $800.00 for temporary attorney fees which had not been paid at the time of trial in this case. Based in part on Jose's lack of expenses for living due to a mortgage free home gifted to him by his mother, Jose shall pay $7,500.00 towards Chelsie's attorney fees in this case as well. Both awards of attorney fees shall be paid within 90 days of the entry of this Order.

Thus, although the only evidence at trial regarding Chelsie's attorney fees was her testimony that she owed approximately $3000 at the time of trial, the court awarded attorney fees over double that amount.

Iowa Rule of Civil Procedure 1.904(1) requires a court to "find the facts in writing, separately stating its conclusions of law, and direct an appropriate

judgment." These findings must enable appellate review of the reasonableness of the attorney-fee award. *Boyle v. Alum-Line, Inc.*, 773 N.W.2d 829, 834 (Iowa 2009). The purposes of this rule "may not adequately be served to the extent that the trial court delegates to counsel its own responsibility to scrutinize the record, select apt principles of law, and fully articulate the bases for a sound, fair decision." *Kroblin v. RDR Motels, Inc.*, 347 N.W.2d 430, 435 (Iowa 1984) (discussing the predecessor to rule 1.904, former Iowa Rule of Civil Procedure 179(a)).

The transcript shows the district court permitted proposals or briefs to be submitted to the court by email and exchanged with opposing counsel following trial. While petitioner failed to file a final brief on appeal, her proof brief indicates she submitted a response to the court's solicitation for proposed rulings, although the submission was not entered into the record. In her proof brief is the following statement:

> At the close of the trial record, The Court requested the attorneys of record to prepare and submit their proposals to the Court through email and provide the other party a copy of said proposal. . . . Although not part of this record, those submissions were utilized by the trial court in making its' final ruling. *An issue addressed by the Attorney for Petitioner were the Petitioner's attorney fees and it is likely the Court relied that on making its attorney fee award.*

(Emphasis added). Thus, it appears the court ultimately adopted an award of attorney fees based on an amount suggested in a submission by petitioner's counsel, rather than the evidence in the record.

The dissolution decree awarded Jose the former marital home in its entirety, and Jose has a higher income than Chelsie. For these reasons, we do not disturb the district court's judgement that Jose should assist with Chelsie's attorney fees;

however, we reduce the amount of the judgment to $3000, to coincide with Chelsie's trial testimony.

**Conclusion**

We affirm the portions of the dissolution decree pertaining to physical care and visitation. However, we reduce the trial court's award of attorney fees to $3000.

**AFFIRMED AS MODIFIED.**