# IN THE COURT OF APPEALS OF IOWA

No. 22-1902
Filed August 30, 2023

**JERRIN MICHAEL CROWELL,**
Petitioner-Appellee,

**vs.**

**MELISSA LEILANI BONILLA,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, William A. Price, Judge.

A mother appeals the district court's award of physical care of her child to the father. **AFFIRMED AND REMANDED WITH DIRECTIONS TO DETERMINE ATTORNEY FEES.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Jamie Hunter of Dickey & Campbell Law Firm, PLC, Des Moines, for appellee.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

Melissa Bonilla appeals a district court order placing physical care of her child, L.E.B., with the child's father, Jerrin Crowell. We affirm the district court, relying in part on the adverse credibility findings made against Melissa by multiple judicial officers in Iowa and California, and remand for the limited purpose of the district court ordering Melissa to pay Jerrin's reasonable appellate attorney fees, not to exceed $5000.

## I.    Background Facts & Proceedings

Jerrin and Melissa met in California around 2017 or 2018 and moved to Iowa just before the birth of the child in 2020, to reside with Jerrin's family. There is some dispute as to what happened immediately before the child's birth, but the record establishes Melissa flew back to California days before giving birth, the child was born in California, and then both Melissa and the child returned to Iowa for several weeks after. Melissa then returned to California on her own initiative, and Jerrin filed a petition in Iowa for custody, visitation, and support.

Jerrin and his family primarily live in Iowa, while Melissa and her family primarily live in California. At the time of trial, Jerrin was attending barber school and resided alone in a home owned by his mother. Melissa was employed at a furniture and decorations store and also lived in her mother's home.

A jurisdictional hearing was held on Jerrin's petition to resolve a dispute over whether the action belonged in Iowa or California. After that hearing, the Iowa district court expressly found Melissa "fail[ed] to serve as a credible witness," in part due to concerns she forged documents or otherwise perpetrated fraud while applying for public benefits.

A subsequent temporary-matters order granted joint legal custody and provided for alternating three-week periods of parenting time. When Melissa exercised parenting time, she did not involve Jerrin in parenting decisions or activities, like medical check-ups. When Jerrin exercised parenting time, Melissa repeatedly called for welfare checks and made unsubstantiated allegations of child abuse. Melissa expressed concerns about Jerrin's family, opining she did not want her child around "those type of people."

While the temporary-matters order was in effect, Melissa and Jerrin stayed together at a hotel in California where, at one point, Jerrin was taken by ambulance to a hospital. The parties dispute what happened before the ambulance arrived: Melissa claims Jerrin overdosed on drugs, while Jerrin claims he passed out from a pill that Melissa gave him. In any event, Jerrin left the hospital without receiving treatment. Melissa reported to authorities that Jerrin had overdosed, which prompted a child-welfare proceeding in California, a temporary stay of the Iowa proceedings, and a temporary reduction in Jerrin's parenting time. The California court found there was "absolutely nothing before the court" to prove Jerrin was abusing drugs, and the court ordered the parties to follow the three-week rotating schedule of parenting time set by the Iowa court.

Next, Melissa petitioned for a protective order in California, citing Jerrin's alleged drug overdose and making new allegations of domestic abuse. Melissa attempted to include the child in the scope of the protective order and asked for a five-year term. The California court denied the petition after a contested hearing, specifically finding Jerrin "credible" and Melissa "not credible."

A contested custody trial was held in Iowa. Melissa represented herself. After hearing witness testimony, the district court granted the parties joint legal custody and granted physical care to Jerrin with parenting time for Melissa. The ruling repeatedly cited Melissa's lack of credibility in its rationale, noting even Melissa's own exhibits could not corroborate her version of the facts on key events like a recent disputed custody exchange. Melissa appeals.

## II.    Standard of Review

Our review of matters involving child custody and care is de novo. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). "We review the entire record and decide anew the factual and legal issues preserved and presented for review." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). While we are not bound by the fact-findings of the district court, we give them weight, especially to credibility determinations. *Thorpe*, 949 N.W.2d at 5.

## III.    Discussion

Melissa argues the district court should have placed the child in her physical care rather than Jerrin's. She emphasizes her version of events regarding drug use and domestic violence and that she was the primary historical caregiver for the child. Alternatively, Melissa requests an increase in parenting time from the district court's order, returning to the three-week alternating schedule.

In deciding an issue of child custody and care under chapter 600B, the controlling consideration is the best interests of the child. *Hensch*, 902 N.W.2d at 824; Iowa R. App. P. 6.904(3)(o); *see also In re Marriage of Brainard*, 523 N.W.2d 611, 614 (Iowa Ct. App. 1994). In determining physical care, this court considers several factors, including those set out in Iowa Code section 598.41(3) and *In re*

*Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *See* Iowa Code § 600B.40(1) (providing "section 598.41 shall apply" to chapter 600B proceedings); *Stanley v. Winters*, No. 22-1552, 2023 WL 2396539, at *2 (Iowa Ct. App. Mar. 8, 2023). The overall objective in determining physical care is to promote the child's physical health, mental health, and social maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 700 (Iowa 2007). "The critical issue is which parent will do better in raising the child." *In re Marriage of Burkle*, 525 N.W.2d 439, 441 (Iowa Ct. App. 1994).

Taking into account these objectives and considerations, we affirm the placement of physical care with Jerrin. We agree with the rationales expressed by the district court's ruling, which emphasized which parent would support the child's relationship with the other and which parent could best support the child's development. Throughout the lifetime of this case, Melissa repeatedly made unsubstantiated accusations against Jerrin. This behavior, coupled with Melissa's refusal to include Jerrin in parenting decisions and the difficulties she caused at parenting-time exchanges, speaks loudly to her unwillingness to co-parent. *See* Iowa Code § 598.41(3)(e). In contrast, the district court found (based in part on credibility findings) that Jerrin "is willing and able to foster a positive relationship between L.E.B. and her mother and extended family." We respect and defer to that finding. *See Hansen*, 733 N.W.2d at 703. We also agree with the district court that Jerrin would be more likely to provide a stable home for the child and that his extended family will help nurture and support the child's development. *See id.* at 700; *Winter*, 223 N.W.2d at 166.

As to Melissa's argument that she should receive physical care based on her allegations of Jerrin's drug abuse and domestic violence, these allegations rest almost entirely on testimony from Melissa's trial witnesses—in other words, from Melissa herself and, to a lesser extent, from her relatives. As the district court noted, even before the custody trial, two different judges (one in Iowa and one in California) and one commissioner (in California) found Melissa was not credible. A fourth judge found her not credible in the ruling that led to this appeal. We defer to these findings, particularly given that Melissa's apparent dishonesty has stretched across multiple case types and jurisdictions. *See Thorpe*, 949 N.W.2d at 5.

The record generally supports Melissa's contention that she was the primary caregiver for the child, but we recognize this was largely a consequence of Melissa taking the child back to California on her own initiative. While we afford some weight to the parent who historically acted as the child's primary caregiver, this factor is not dispositive. *See Eviglo v. Bedia*, No. 22-2108, 2023 WL 4530263, at *2 (Iowa Ct. App. July 13, 2023); *Flick v. Stoneburner*, No. 15-1930, 2016 WL 2743449, at *2 (Iowa Ct. App. May 11, 2016). We agree with the district court that other factors outweigh Melissa's historical caregiving, and we affirm.

Having rejected Melissa's request to overturn the physical-care ruling, we turn to her request to return to an alternating three-week schedule for parenting time. We agree with the district court that the distance between Iowa and California renders this schedule unworkable in the long-term, and we find it would be detrimental to the child's physical health, mental health, and social maturity—particularly as the child nears school age. *See Hansen*, 733 N.W.2d at 700; *see*

*also* Iowa Code § 598.41(3)(h). We affirm the parenting plan adopted by the district court.

Last, Jerrin contends he should be awarded appellate attorney fees. An award of appellate attorney fees in favor of the prevailing parting is within our discretion, *see* Iowa Code § 600B.26, and "we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Hensch*, 902 N.W.2d at 827. Jerrin has accumulated a large bill for two years of litigation, was obligated to defend the district court's ruling, and has prevailed over all issues raised in this appeal. On the other hand, Melissa's income appears to be relatively limited, though we credit Jerrin's argument Melissa may have recently received a cash settlement and has been generally dishonest (including about her earning capacity). Weighing these competing interests, we believe Melissa should be required to pay some amount toward Jerrin's appellate attorney fees. Unfortunately, Jerrin's appellate attorney has not filed a fee affidavit with our court, which frustrates our ability to award fees without additional litigation on remand.

We urge that, in future cases, parties seeking appellate attorney fees should timely file itemized fee affidavits that allow us to exercise our discretion without requiring an additional remand to the district court. Because no appellate-attorney fee affidavit is before us, we remand to the district court for the limited purpose of determining reasonable appellate attorney fees, not to exceed $5000, as determined by the district court following a hearing or review of filed fee affidavits.

**IV.     Disposition**

We affirm the physical-care ruling and remand with directions for the district court to order Melissa to pay Jerrin's reasonable appellate attorney fees, not to exceed $5000, following a hearing or review of filed fee affidavits.

**AFFIRMED AND REMANDED WITH DIRECTIONS TO DETERMINE ATTORNEY FEES.**