**IN THE COURT OF APPEALS OF IOWA**

No. 14-0094
Filed October 15, 2014

**Upon the Petition of**
**KYLE L. DRYSDALE,**
          Petitioner-Appellant,

**And Concerning**
**CANDICE ABBOTT,**
          Respondent-Appellee.
_____

          Appeal from the Iowa District Court for Polk County, Robert Hutchison,

Judge.


          Father appeals the court's award of physical care to the mother.  He also

claims the court erred in its disposition of the child's uninsured medical

expenses.  **AFFIRMED AS MODIFIED AND REMANDED.**


          Eric Borseth of Borseth Law Office, Altoona, for appellant.

          Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellee.


          Heard by Danilson, C.J., and Vogel and Bower, JJ.

**BOWER, J.**

Kyle Drysdale appeals from a district court ruling granting physical care to Candice Abbott. He also appeals the order requiring him to pay the first $500 of uninsured medical expenses. Candice requests appellate attorney fees. We find the amount of uninsured medical expenses ordered is incorrect and remand for entry of an appropriate order consistent with this opinion. We affirm the decision of the district court concerning physical care and deny Candice's request for appellate attorney fees.

## I.      BACKGROUND FACTS AND PROCEEDINGS

Kyle Drysdale and Candice Abbott are the parents of one child, N.D., born in 2006. Kyle and Candice were never married. Their romantic relationship began in 2006 and ended in 2012. Frequent breakups marked the couples' tumultuous relationship. After the final breakup in 2012, the couple has been unwilling to effectively communicate.

We incorporate the district court's background of the parties:

> Kyle is 27 years of age, and has never been married; N.D. is his only child. Candice is 26 years of age, and has also never been married; N.D. is her only child as well. . . . the parties agreed that paternity had never been established in Kyle for the child before the filing of this action. Kyle was not listed as the father on N.D.'s birth certificate, nor was there ever an affidavit of paternity prepared. However, the parties agree that Kyle should be established as N.D.'s father.
> The history of the parties to this case is an important factor for the Court in determining the proper resolution of the dispute presented here. Kyle was born and raised in Winterset, Iowa, graduating from high school there in 2004. Kyle testified that he moved out of his parents' home when he was 17, prior to graduating from high school, simply because he was ready to be on his own. He met Candice in the spring of 2005. At that point, she was still in high school and was 17. They moved in together in

September 2005. At this point, Candice was 18, but was still in high school. It was not long before Candice became pregnant; as stated above, N.D. was born in June 2006.

At the time Kyle and Candice began living together, they were residing in Winterset. Kyle was working as a welder in Winterset. In 2006 Kyle purchased a small home in St. Charles, Iowa (which is near Winterset), and the parties moved there together. Kyle continued to work in Winterset until April 2008 when he took a better paying job as a welder in Des Moines, where he continues to work at present. He currently earns $21.15 per hour. Although he has earned overtime pay in the past, Kyle testified that he currently receives little overtime. Kyle's basic work hours are 8:00 a.m. to 4:30 p.m., although he stated his employer is very flexible with work hours to accommodate family needs. He further testified that although health insurance is offered through his employment, he is not covered by that insurance. Rather he stated that he had obtained a separate health insurance plan through Farm Bureau with Wellmark at a cost of $125 per month.

In August 2012 Kyle purchased the home where he currently resides, located in Des Moines, Iowa. At that point, Kyle, Candice and N.D. were living together, and they all moved from St. Charles to Des Moines. Kyle testified that the primary reasons for the move were that he wanted to be closer to his employment and wanted to live in a bigger city. The move cut Kyle's commute from approximately 40 minutes to approximately 10 minutes. Kyle's home is located in the Saydel School District. N.D. attended school in Saydel during the fall semester of 2012. The remainder of his schooling has been in Winterset. No one resides at the Des Moines address except Kyle and N.D., during the time he is with Kyle.

Candice currently resides in Winterset, Iowa. She lives in the apartment with N.D., and has no other roommates. She is currently employed as a bartender in Winterset; she has worked there since February 14, 2013. Candice works Monday and Tuesday from 12:00 p.m. to 6:00 p.m., alternate Wednesdays from 12:00 p.m. to 6:00 p.m. and Saturday and Sunday from 10:00 a.m. to 6:00 p.m. She earns $7.50 per hour plus tips, and estimates her earnings to be $10 to $12 per hour. Candice states that she gets home at approximately 6:15 p.m. on the days she works, and that N.D.'s bedtime at her home is 8:30 p.m.

An order on temporary matters was entered February 25, 2013. According to the terms of that order, N.D. was to be with Candice from Monday morning at 7:00 a.m. to Friday at 6:00 p.m. The child was to be with Kyle from Friday evening at 6:00 p.m. to Monday morning at 7:00 a.m. Because N.D. has been attending school in Winterset, Kyle has elected to spend every Sunday

evening with his parents in Winterset. This has allowed the child to have weekly contact with his paternal grandparents, with whom the Court finds N.D. has a close relationship. In addition, it has allowed the child to return to his mother's care on Monday morning at 7:00 a.m. without having to arise at a very early hour.

On November 25, 2013 the court entered a decree granting the parties joint legal custody of N.D., with physical care given to Candice. The court created a visitation schedule substantially similar to the arrangement set out in the February order. However, the court allowed Kyle a midweek visit from 5:30 p.m. to 7:30 p.m., and granted Candice visitation every third weekend. The court also created a plan for summer and holiday visitation. Kyle was ordered to pay $587.33 in monthly child support, to provide for N.D.'s health insurance at a cost of $125 per month and pay the first $500 of any uninsured medical expense. The court allowed Kyle to claim N.D. as a dependent for tax purposes if he remained current on his other obligations. The court ordered Kyle to pay $3500 in attorney fees to Candice, and taxed two-thirds of the court costs to Kyle and one-third to Candice.

Kyle appeals the district court's order granting physical care to Candice. He claims the court erred in failing to consider various defects in Candice's ability to provide a stable environment for N.D. He believes he is in a better position to support N.D. Additionally, Kyle claims the court erred in ordering him to pay the first $500 in uninsured medical expenses. He seeks to lower his payment to $250 and require Candice to contribute $250. Candice asks us to affirm the district court and award her appellate attorney fees.

**II. SCOPE OF REVIEW**

We review decisions on child custody de novo. *In re Marriage of Hynick*, 727 N.W.2d 575, 577 (Iowa 2007). We have a duty to examine the entire record and adjudicate anew the rights on the issues properly presented. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Generally, we give considerable deference to the district court's credibility determinations because the court has a firsthand opportunity to hear the evidence and view the witnesses. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

**III. ANALYSIS.**

**A. Physical Care**

Kyle claims the court erred in granting physical care to Candice. In matters of child custody, the first and foremost consideration "is the best interest of the child involved." *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983); *see also* Iowa R. App. P. 6.904(3)(o). The Iowa Code provides a nonexclusive list of factors to be considered in determining a custodial arrangement that is in the best interest of a child. Iowa Code § 598.41(3) (2013); *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). We also look to the non-exclusive considerations in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974) (including the needs of the child, the characteristics of the parents, the relationship between the child and each parent, and the stability and wholesomeness of the proposed environment). The goal is to assure the child "the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage." Iowa

Code § 598.41(1)(a). We seek to place the child in the environment "most likely to bring [the child] to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695.

In seeking to overturn the court's grant of physical care to Candice, Kyle raises multiple assertions, most of which amount to personal attacks on Candice's character, and are irrelevant in assessing N.D.'s best interests. In drawing our own conclusions, we evaluate the decision de novo while giving appropriate deference to the court.

The trial court partially relied on the findings of a court-appointed custody evaluator in determining N.D.'s best interests. The evaluator assessed Kyle, Candice, and N.D. In her conclusions, the evaluator found Candice more suitable as the primary physical custodian of N.D. due to her strong emotional connection with N.D. While the evaluator praised Kyle's stable housing and employment record, the evaluator noted a parent's ability to attend to the emotional and physical needs of the child carries more significance. The district court agreed with the evaluator's assessment. Moreover, the court noted its "reservations about joint legal care." The court stated its disapproval of the couples' inability to communicate, and their tendency to speak ill of each other in the presence of N.D. The court also expressed concern about the instances of Kyle's emotional and financial control over Candice. The court found Kyle used his superior income status to control Candice's activities and stated: "These are classic symptoms of domestic abuse and controlling behaviors, and constitute a

major warning flag." The custody evaluator echoed this sentiment in her report. The court did note no evidence of actual physical abuse had been alleged.

Based on our de novo review of the record, we affirm the court's award of primary physical care to Candice.

### B.     Uninsured Medical Expenses

Based on the income figures the district court ordered Kyle to pay the first $500 of N.D.'s uninsured medical expenses. Once the $500 is satisfied, the parents will pay based on their respective incomes. Kyle takes issue with this portion of the decree and claims the district court did not properly follow the child support guidelines.

The guidelines provide:

> Uncovered medical expenses means all medical expenses for the child(ren) not paid by insurance. . . . [T]he custodial parent shall pay the first $250 per year per child of uncovered medical expenses up to a maximum of $800 per year for all children. Uncovered medical expenses in excess of $250 per child or a maximum of $800 per year for all children shall be paid by the parents in proportion to their respective net incomes.

Iowa Ct. R. 9.12(5). Rule 9.12 provides the custodial parent "shall pay." The word "shall" imposes a duty. Iowa Code § 4.1(30)(a). The word "shall" does not mean "may." *State v. Luckett*, 387 N.W.2d 298, 301 (Iowa 1986). The district court improperly ordered Kyle to pay the first $500 in uncovered medical expenses. As the custodial parent, Candice is responsible for the first $250 in uncovered medical expenses. Once the $250 is reached, the parents will pay "in proportion to their respective net incomes."

### C.     Appellate Attorney Fees

Candice asks for appellate attorney fees.  The right to recover attorney fees does not exist at common law, and fees are not to be allowed absent "a statute or agreement expressly authorizing it."  *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 182 (Iowa 2010).  Iowa Code section 600B.26 gives this court the discretion to award the prevailing party reasonable attorney fees.   The decision to award appellate attorney fees rest in our discretion, and we will consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal."  *In re Fiscus*, 819 N.W.2d 420, 425 (Iowa 2012).  We decline to award appellate attorney fees to Candice in this matter.  The costs of this action are assessed equally to the parties.

**AFFIRMED AS MODIFIED AND REMANDED.**

Vogel, J., concurs; Danilson, C.J., concurs specially.

**DANILSON, C.J.** (concurring specially)

I concur specially because, unlike the majority and the district court, I do not believe Kyle's evidence or arguments were overly critical of or an unfair attack upon Candice's character. Kyle attempted to distinguish himself from Candice as a better caretaker for their minor child by showing his stability and Candice's instability.

Stability of each parent remains a factor in determining which parent can provide the "long range best interest of the [child]." *See Winter*, 223 N.W. 2d at 166-167. Our supreme court cited *Winter* in stating, "Although Iowa Code section 598.41(3) does not directly apply to physical care decisions, we have held that the factors listed here as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child." *Hansen*, 733 N.W.2d at 697. Our case law is also inundated with references to a parent's stability as it relates to stability of residence, employment, support systems, relationships, caretaking, financial health, and mental health.[1]

Here, Candice had a history of poor stability of residence and employment. Kyle contended Candice had fifteen residences and thirteen jobs since 2005, and his contentions appear reasonably supported. Because a parent's stability is a factor in making a physical care decision, Candice's many residences and jobs were fair game for Kyle to address. He should not be criticized for the extended discussion or presentation of such evidence. Rather

---

[1] Citations to all such case law would be so extensive as to be prohibitive.

than describing Kyle as being highly critical of Candice, the district court and the majority should have acknowledged Candice's significant instability of residence and employment and determined whether other factors outweighed her instability.

I concur with the majority's ruling, but find the decision close. I conclude that the factors weighing against Candice—including her suspect support system—are outweighed by other factors, such as Kyle's somewhat controlling demeanor and Candice's ability to provide better emotional support for the child. I also note that a custody evaluator and the district court had the opportunity to view the demeanor of the parents. *See In re Marriage of Engle*r, 503 N.W.2d 623, 625 (Iowa 1993). ("The trial court had the parties before it and was able to observe their demeanor and was in a better position than we are to evaluate them as custodians.").